In the Matter of BARBARA EBERT et al., Respondents-Appellants, v NEW YORK STATE OFFICE OF PARKS, RECREATION & HISTORIC PRESERVATION, Respondent, and STATE UNIVERSITY OF NEW YORK/STATE UNIVERSITY CONSTRUCTION FUND, Appellant-Respondent.

CITY OF ITHACA, Respondent, v STATE UNIVERSITY CONSTRUCTION FUND, Appellant.

Third Department, July 31, 1986

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Joel F. Spitzer* of counsel), for appellant-respondent.

*Allen, Lippes & Shonn (Richard J. Lippes* of counsel), and *Peter Henner* for respondents-appellants.

*Ralph W. Nash* for City of Ithaca, respondent.

## OPINION OF THE COURT

CASEY, J.

We hold that the State University Construction Fund (Fund) is not required to comply with a local historical preservation ordinance before it can demolish an existing structure on a State college campus as part of a construction project.

In 1982, the trustees of Cornell University submitted a proposal for the demolition of Stone Hall, a building owned by the State and formerly used by the State College of Agriculture and Life Sciences at Cornell University, and for the construction of a considerably larger educational facility in its place. The proposal received the approval of the trustees of the State University of New York, and budget requests for the project were approved by the Governor and the Legislature. The Fund followed certain procedures preliminary to the actual demolition and construction, including consultation with the State Commissioner of Parks, Recreation and Historic Preservation (State Commissioner) pursuant to PRHPL 14.09, and the preparation of draft and final environmental impact statements pursuant to the State Environmental Quality Review Act (SEQRA; ECL art 8).

In 1984, Stone Hall and several adjacent buildings were

listed in the State and national historic preservation registers, and the following year the City of Ithaca Landmark Preservation Commission (local agency) designated Stone Hall as a local landmark. Pursuant to a City of Ithaca ordinance, no building so designated could be demolished without a permit issued by the local agency. The Fund refused to comply with this permit requirement, contending that its project was exempt from regulation by the local agency. The demolition of Stone Hall began on February 10, 1986.

Within hours of the commencement of the demolition work, petitioners, as advocates of historic preservation, commenced a CPLR article 78 proceeding by service of a petition and an order to show cause, which contained a temporary restraining order enjoining the Fund from demolishing Stone Hall. Petitioners alleged that the Fund and the State Commissioner had failed to explore alternatives and to mitigate the adverse impact of demolishing Stone Hall, as required by PRHPL 14.09, that the environmental impact statements prepared by the Fund pursuant to SEQRA (ECL 8-0109) were inadequate and that the Fund was required to obtain a permit from the local agency. Plaintiff, the City of Ithaca, commenced an action for a permanent injunction based upon the permit requirement and moved for a preliminary injunction.

Special Term held that the Fund was required to obtain a permit from the local agency before Stone Hall could be demolished, and granted injunctive relief to petitioners and plaintiff. As to petitioners' claims that there was a lack of compliance with the requirements of PRHPL 14.09 and SEQRA, Special Term dismissed that portion of the petition. The Fund and petitioners have appealed from the adverse portions of the resulting judgment and order.

The State adopted a comprehensive statutory framework for historic preservation in 1980 (L 1980, ch 354). Known as the New York State Historic Preservation Act of 1980, the legislation provided that its purpose is: "to continue and advance the state's historic preservation programs and activities, to continue the responsibility for the coordination of such programs and activities with the commissioner of parks and recreation, to foster consistency of state activities with historic preservation policy, to encourage and assist local governments in local preservation programs and activities and to encourage and assist private agencies and individuals undertaking preservation by private means" (L 1980, ch 354, § 1). To this end, the act added historic preservation articles to the General Munici-

pal Law (General Municipal Law art 5-K), the Public Buildings Law (Public Buildings Law art 4-B) and the Parks, Recreation and Historic Preservation Law (PRHPL art 14).

The framework provided by General Municipal Law article 5-K is "intended to maintain and encourage the opportunity and flexibility for the counties, cities, towns and villages of the state to manage the historic and cultural properties *under their jurisdiction* in a spirit of stewardship and trusteeship for future generations" (General Municipal Law § 119-aa; emphasis supplied). Thus, local governments are empowered to "[p]rovide by regulations, special conditions and restrictions for the protection, enhancement, perpetuation and use of places, districts, sites, buildings, structures, works of art and other objects having a special character or special historical, cultural or aesthetic interest or value" (General Municipal Law § 119-dd [1]). Local governments are also authorized to establish landmark or historical preservation boards or commissions to carry out the local historic preservation programs (General Municipal Law § 119-dd [2]).

Public Buildings Law article 4-B provides that its purpose is "to provide that the instrumentalities of the state administer the historic and cultural properties *under their control* in a spirit of stewardship and trusteeship for the future generations" (Public Buildings Law § 60; emphasis supplied). To achieve this purpose, the Commissioner of the Office of General Services or the chief executive officer of any State agency is required to consult with the State Commissioner "as early in the planning process as may be practicable when planning to demolish, alter or transfer any property *under their jurisdiction* listed on the state or national register * * * for the purpose of exploring alternatives to demolition, alteration or transfer" (Public Buildings Law § 63 [1]; emphasis supplied). PRHPL 14.09 contains more procedural and substantive detail as to the consultation process when State agency activity might affect historical or cultural property *(see also,* 9 NYCRR part 428).

Construing the act as a whole and considering its various provisions together and with reference to each other *(see, People v Mobil Oil Corp.,* 48 NY2d 192, 199), and taking into account the legislative history of the act and the statutes of which it is made a part *(see, Rankin v Shanker,* 23 NY2d 111, 114), we conclude that the authority granted to local governments to regulate properties under their jurisdiction for historical preservation purposes does not include the power to

regulate the activity of a State agency which might affect historical or cultural property under the control and jurisdiction of the State agency. The act contains a comprehensive review process at the State level for such State agency activity *(see,* Public Buildings Law § 63 [1]; PRHPL 14.09). Had the Legislature intended the review process for such activity to occur at both the State and local levels, it would have so provided; its failure to include such a provision is significant *(see, e.g., Pajak v Pajak,* 56 NY2d 394, 397; *Patrolmen's Benevolent Assn. v City of New York,* 41 NY2d 205, 208-209). Rather than establishing duplicative review procedures, the act calls for coordination and cooperation (L 1980, ch 354, § 1; PRHPL 14.01). With respect to State agency activities, PRHPL 14.09 (2) expressly seeks "to avoid inconsistency or duplication in review functions", and the Governor's memorandum of approval states that his concerns about duplication in the review process and delay of State projects had been satisfied (1980 McKinney's Session Laws of NY, at 1871). Thus, we conclude that State agency projects, such as that at issue herein, are subject to historical preservation review only at the State level, as detailed in PRHPL 14.09 and 9 NYCRR part 428.

Turning to the question of whether there was compliance in this case with the requirements of PRHPL 14.09, we agree with Special Term that petitioners' claim must fail. The record firmly establishes that the Fund fully explored all feasible and prudent alternatives and gave due consideration to feasible and prudent plans which would avoid or mitigate adverse impacts, as required by PRHPL 14.09 (1). The thrust of petitioners' argument is that the act requires that all *possible* measures be taken to preserve historic structures, but PRHPL 14.09 is written in terms of "feasible and prudent" plans and alternatives (PRHPL 14.09 [1]), and a State agency must avoid or mitigate adverse impacts only "[t]o the fullest extent practicable" (PRHPL 14.09 [2]). The decision to demolish Stone Hall was based upon a determination that it was not feasible, prudent or practicable to preserve the structure, and our review of the record reveals nothing irrational in such a determination. The measures ordered to mitigate the adverse impact of demolition are those specified by the act *(see,* Public Buildings Law § 63 [3]). We also find lacking in merit petitioners' claim that the "hard look" required under SEQRA was not undertaken by the responsible State agencies.

Having concluded that the requirements of the State-level

historic review process under PRHPL 14.09 were complied with and that the proposed project is not subject to an additional historical preservation review at the local level, we further conclude that Special Term erred in granting injunctive relief to petitioners and plaintiff.

MAHONEY, P. J., KANE, MIKOLL and LEVINE, JJ., concur.

Judgment modified, on the law, without costs, by reversing so much thereof as granted petitioners' relief on their third cause of action; said cause of action dismissed; and, as so modified, affirmed.

Order modified, on the law, without costs, by reversing so much thereof as granted plaintiff's motion for a preliminary injunction; motion denied; and, as so modified, affirmed.