In the Matter of R. GARDNER CONGDON et al., Appellants, v
WASHINGTON COUNTY et al., Respondents.

Third Department, July 23, 1987

28

### APPEARANCES OF COUNSEL

*Oliver & Oliver (Lewis B. Oliver, Jr.,* and *Harriet B. Oliver* of counsel), for appellants.

*Miller, Mannix, Lemery & Kafin, P. C. (Benjamin R. Pratt, Jr.,* of counsel), for Washington County and others, respondents.

*Robert Abrams, Attorney-General (David A. Munro, Peter H. Schiff* and *Douglas H. Ward* of counsel), for Department of Environmental Conservation, respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

In late August or early September 1984, representatives of respondent Village of Hudson Falls, located in Washington County, and respondent Adirondack Resource Recovery Associates (hereinafter Adirondack) began discussions regarding a proposal by Adirondack to construct a solid waste incinerator facility within the village. The village owned a 16-acre tract of industrially zoned property and, on October 3, 1984, it gave Adirondack an irrevocable option to purchase such land. Later that month, the village notified approximately 60 other municipalities and agencies of its desire to act as "lead agency"

for the purposes of the required review under the State Environmental Quality Review Act (ECL art 8). The Commissioner of respondent Department of Environmental Conservation was notified by Region No. 5 of the Department that it wished to act as lead agency. On November 30, 1984, the Commissioner designated the village as the lead agency for generic environmental review, but designated Region No. 5 as the lead agency for a supplemental site specific environmental review.

In the meantime, the village had ordered the preparation of a draft environmental impact statement (hereinafter EIS), which was submitted and accepted on November 19, 1984. A public hearing was held, after which a revised draft EIS was prepared. A final EIS was accepted by the village on December 20, 1984, and notice of the village's written findings was published the next day.

On December 31, 1984, respondent Warren and Washington Counties' Industrial Development Agency (hereinafter IDA) caused to be issued and sold $50 million worth of bonds to finance the project. Respondents Washington, Warren and Essex Counties entered into waste disposal agreements with IDA, which entered into a contract with Adirondack by which Adirondack would construct and operate the facility.

Petitioners, individuals and a not-for-profit association opposed to the project, commenced this litigation which contains elements of a CPLR article 78 proceeding, a declaratory judgment action and a General Municipal Law § 51 taxpayer action. Petitioners seek to declare null and void the final EIS, the waste disposal agreements and the actions relating to the bond financing of the project, and to enjoin further actions in furtherance of the project. After the parties moved for summary judgment, Supreme Court, in a thorough and well-reasoned decision, dismissed the petition/complaint (134 Misc 2d 765). This appeal by petitioners ensued.

■ Initially, petitioners claim that the three counties have unlawfully obligated themselves to payment of the IDA bonds. General Municipal Law § 870 provides that IDA bonds may not be a debt of a municipality, the municipality shall not be liable thereon and the bonds may not be payable out of any funds other than those of the IDA. Further, the guarantee of credit by a municipality to a corporation is unconstitutional (NY Const, art VIII, § 1). Each of the counties agreed to pay the IDA for disposal of solid waste at the facility. The price

was to be calculated according to a formula which, the parties admit, was designed to cover the facility's operating costs including debt service on the IDA bonds. Petitioners contend that such formulation is an indirect way of obligating the counties on the bonds. However, the counties' obligation is terminable upon certain contingencies. Further, the counties are not liable to the bondholders. Thus, the waste disposal agreements are service contracts. This situation is analogous to that in *Wein v City of New York* (36 NY2d 610). In that case, the Court of Appeals found that a statutory scheme whereby the City of New York contributed to the Stabilization Reserve Corporation, which in turn sold bonds, was not unlawful. We conclude that the plan at issue herein is not violative of NY Constitution, article VIII, § 1 or General Municipal Law § 870.

Next, petitioners contend that the Commissioner erred in selecting the Village of Hudson Falls as a lead agency along with Region No. 5, and that such error renders the subsequent proceedings null and void. Initially, we reject petitioners' claim based on the failure of the village to notify the Town of Moreau, Saratoga County, and the Adirondack Park Agency (APA) that it desired lead agency status. The village so notified approximately 60 agencies and municipalities, but failed to notify these two. Significantly, neither the Town of Moreau nor APA contested the lead agency request or raised this alleged defect. The Town of Moreau was not eligible to act as lead agency since the proposed site is located in the Town of Kingsbury, Washington County. Petitioners point out that one site offered as an alternative in the draft EIS is located in the Town of Moreau. However, it is clear from the record that this alternative was not at issue until the draft EIS was prepared. At the time lead agency status was sought, the only proposed site was located in the Village of Hudson Falls, Town of Kingsbury. As for the APA, its only connection is that ash residues from the project were proposed to be disposed of at a site in Essex County within APA's jurisdiction. Thus, its involvement was far more indirect than that of other agencies and municipalities which were notified. Thus, we find that, even assuming that the Town of Moreau and the APA should have been notified, such noncompliance was inconsequential *(cf., Town of Victory v Flacke,* 101 AD2d 1016).

Petitioners also challenge the selection of the village as the lead agency on the ground that it was not the body with

principal responsibility for decision making. It is vital that the body selected as the lead agency have decision-making power (see, *Matter of Save the Pine Bush v Planning Bd.*, 96 AD2d 986, *appeal dismissed and lv denied* 61 NY2d 668; Weinberg, 1985 Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 17½, 1987 Pocket Part, ECL 8-0111, at 18-19). As noted by Supreme Court, once the village granted to Adirondack the irrevocable option to purchase the 16-acre tract, it had very little further decision-making power. For example, it is unlikely that any zoning decisions needed to be made. In any event, such decisions would be made by the Board of Zoning Appeals, not the Village Board. On the other hand, Region No. 5 would be in the best position to assess the over-all impact of the project on the environment of the region. However, as observed by Supreme Court, a reviewing court cannot substitute its judgment for that of the Commissioner. His decision may only be set aside if it is irrational (see, *Matter of Environmental Defense Fund v Flacke,* 96 AD2d 862). Here, the Commissioner, by making Region No. 5 the lead agency for a supplemental site-specific environmental review, took into consideration the regional impact of the project. Thus, while Region No. 5 may appear to be the more appropriate lead agency, the Commissioner's determination cannot be said to be irrational.

■ Petitioners also contend that the village's consideration of the final EIS was inadequate. ECL 8-0109 (6) requires that a final EIS be filed with the Commissioner and made available for review and comment before action is taken on the subject proposal. Regulations state that the lead agency may not take action for 10 days after the final EIS is filed (6 NYCRR 617.9 [a]). Further, the law requires that the agency take a "hard look" at the environmental concerns raised in the final EIS (see, *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417). Petitioners point to the haste in which events took place as evidence that a reasonable period of time did not elapse during which the final EIS was examined. The record indicates that the village took no action other than accepting the final EIS. Indeed, as discussed earlier, it is not clear that there were any actions for the village to take. The IDA did not offer bonds until after the 10-day period expired. Although at least one of the involved counties passed a resolution authorizing the execution of a waste disposal contract one day after the final EIS was filed, such action did not, of itself, cause the project to go forward. In fact, it appears that the

primary "action" needed for the project to proceed is the issuance of a number of permits by the Department. Such action had not been taken by the time petitioners commenced this litigation. Therefore, petitioners have not established that the final EIS filed December 20, 1984 was not given adequate consideration.

■ Finally, petitioners point out that ECL 27-0707 (2) (b) requires that an EIS prepared for a solid waste management facility evaluate the proposal "in light of the New York state solid waste management plan in effect on the date of the application". At the time the final EIS was filed in this case, no such plan had been formulated.* Petitioners urge that, since there was no plan, the final EIS must be declared void for failure to comply with ECL 27-0707 (2) (b). It was the village which caused the EIS to be prepared, and it was no fault of the village that a State-wide solid waste management plan had not been formulated by that time. It would be absurd to hold a lead agency to do that which is impossible. Therefore, petitioners' challenge to the final EIS filed December 20, 1984 on this ground is rejected.

■ Petitioners also claim that, due to the absence of a State-wide plan for solid waste management, the Department was without authority to issue permits for the project. This issue is not properly before us. This litigation was commenced December 28, 1984 and, at that time, the Department had not issued any permits. A reading of the complaint/petition indicates that there are no Department permits which petitioners seek to set aside. It appears from the Department's brief on this appeal that, after a number of hearings and submissions, certain permits were issued in 1986. Such permits are the subject of further litigation and their propriety may be adjudicated therein.

KANE, CASEY, YESAWICH, JR., and HARVEY, JJ., concur.

Judgment affirmed, without costs.

---

* Apparently, a solid waste management plan was submitted to the Legislature on March 31, 1987.