In the Matter of CITIZENS FOR CLEAN AIR et al., Petitioners, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents, and COUNTY OF ESSEX et al., Intervenors-Respondents.

Third Department, February 18, 1988

### APPEARANCES OF COUNSEL

*Oliver & Oliver (Lewis B. Oliver, Jr.,* of counsel), for petitioners.

*Robert Abrams, Attorney-General (Francis J. Keehan* of counsel), for respondents.

*Miller, Mannix, Lemery & Pratt (Mark J. Schachner* of counsel), for intervenors-respondents.

### OPINION OF THE COURT

KANE, J. P.

On October 31, 1986, respondent Commissioner of Environmental Conservation (hereinafter the Commissioner) issued a

determination granting intervenor Adirondack Resource Recovery Associates (hereinafter the applicant) specific authority to construct and operate a proposed solid waste incinerator facility in intervenor Village of Hudson Falls, Washington County, subject to special conditions set forth in the report of an Administrative Law Judge (hereinafter ALJ) following an adjudicatory hearing on designated predetermined issues. Petitioners herein seek to enjoin and prohibit any activity in furtherance of the project, together with a declaration that any permits issued in relation thereto are null and void. A description of the history and prior legal proceedings relating to this project are set forth in an earlier decision of this court when the matter was before us *(see, Matter of Congdon v Washington County,* 130 AD2d 27, *lv denied* 70 NY2d 610). This appeal concerns the litigation arising from the issuance of the permits referred to in that decision *(supra,* at 33).

The request for permits was filed by the applicant in October 1985 seeking approval for construction of the facility, together with a further request for party status by petitioners in the approval proceeding. On December 6, 1985, an ALJ issued a notice indicating, *inter alia,* that a preadjudicatory issues conference would be held on January 15, 1986 to rule on petitioners' request for party status and to narrow the issues which would be presented at the subsequent adjudicatory hearing *(see,* 6 NYCRR 624.6 [a]). Following the conference, the ALJ granted petitioners' request for party status and, after a review of the stenographic transcript of the issues conferenced and all the records, documents, lists of witnesses and arguments of counsel, determined that the hearing on the application should be limited to four issues related, generally, to the design of and effect of emissions from the projected facility. Petitioners appealed that decision to the Commissioner *(see,* 6 NYCRR 624.6 [d]), who affirmed the ALJ's rulings but found certain deficiencies in the draft supplemental environmental impact statement (hereinafter SEIS) on the proposed facility. The Commissioner ordered the applicant to submit additional information on the facility's net social and economic benefits and the feasibility of a recycling program, subject to a 30-day comment period, and directed the hearing on the application to go forward on the issues identified by the ALJ.*

---

* The SEIS was required as part of the environmental review process under the State Environmental Quality Review Act (ECL art 8; 6 NYCRR part 617).

A 16-day public hearing before the ALJ was thereafter conducted. Following the hearing, the applicant complied with a request for more information on the issue of recycling and the ultimate decision made by the Commissioner on October 31, 1986 is the subject of this CPLR article 78 proceeding, which was then transferred to this court.

Among the various issues raised by petitioners is their contention that the Commissioner was without authority to grant a construction permit because of noncompliance with statutory requirements (see, ECL art 8). Specifically, ECL 27-0707 (2) (b) provides that, preliminarily, an environmental impact statement (hereinafter EIS) be prepared and that "such statement shall include a description and evaluation of the status of the proposed activity in light of the New York state solid waste management plan *in effect on the date of the application*" (emphasis supplied). The application herein was filed in October 1985 and there was no solid waste management plan in effect at that time. Therefore, petitioners contend that construction permits could not be issued due to noncompliance with statutory requirements.

■ We find no basis in law or logic to adopt such a construction of ECL 27-0707 (2) (b). There is nothing in the wording of the statute or in its legislative history to suggest that it was the intent of the Legislature to limit the jurisdiction of respondent Department of Environmental Conservation (hereinafter DEC) and place a moratorium on the construction and operation of solid waste management facilities pending the completion of a State-wide solid waste management plan by DEC. It is the Commissioner's contention that since there was no plan "in effect" at the time of the permit applications, the requirements in ECL 27-0707 (2) (b) did not become operative. We find this interpretation entirely reasonable and rational and it should therefore be upheld by this court (see, *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459; see also, *Matter of Howard v Wyman*, 28 NY2d 434, 438; *Matter of Toniann's Limousine Serv. v New York State Dept. of Transp.*, 132 AD2d 86, 88).

■ We also find that the Commissioner was correct in his determination of the appropriate emissions operating requirements to be imposed upon the facility. As mandated by statute, they were determined after consultation with and in

response to comments from the Commissioner of Health (see, ECL 19-0306 [2]) and in accordance with the particular emission standards in effect at the time of the completion of the application herein (see, 6 NYCRR 621.3 [a]). We are not persuaded that DEC's consultation with the State Office of Parks, Recreation and Historic Preservation (hereinafter OPRHP) after declaration that the application herein was complete on December 6, 1985 mandates a different conclusion. Although the general requirements for a complete application include consultation with OPRHP, the specific language of the regulations states that an application is not complete "until the process of consultation with the State Office of Parks and Recreation, if required, is complete" (6 NYCRR 621.3 [a] [6] [emphasis supplied]). This regulation stems from PRHPL 14.09 (1), which requires State agencies to confer with OPRHP "if it appears" that proposed projects will have certain effects upon property within OPRHP's jurisdiction. Here, the record demonstrates that there was no reason for DEC to assume that, prior to its conversation with OPRHP in January 1986, there was any reason to believe that the proposed facility would affect property within OPRHP's jurisdiction; thus, it did not "appear" that consultation between the two agencies would be required (see, PRHPL 14.09 [1]). Accordingly, the communication with OPRHP subsequent to the declaration of complete application was supplementary correspondence as contemplated by ECL 70-0105 (2) and 6 NYCRR 621.1 (c) and the Commissioner's rulings in this area are correct, as was his ultimate determination to adopt the conditions suggested by OPRHP; he thus fulfilled his obligation to explore feasible alternatives and mitigate any adverse impact upon cultural resources identified by OPRHP in their various communications with DEC (PRHPL 14.09; 9 NYCRR 428.9; see, Sierra Club v Board of Educ., 127 AD2d 1007, 1008-1009; Matter of Ebert v New York State Off. of Parks, Recreation & Historic Preservation, 119 AD2d 62, 66-67, lv denied 68 NY2d 612).

Petitioners also contend that the Commissioner acted arbitrarily in refusing to consider certain issues for adjudication, such as the feasibility of a recycling program, the issue of "tipping fees" and their costs to the taxpayer, the size of the facility, and the disposal of "fly ash" and "bottom ash" generated by the facility. As previously described herein, the issues identified for adjudication were determined subsequent to a preadjudicatory issues conference held for that very

purpose and restricted to issues "raised by the parties" (6 NYCRR 624.6 [a]), or raised in an EIS "where there is a reasonable likelihood that the issues arising from the [EIS] might lead to the denial of the permit or the attachment of significant permit conditions thereon" (6 NYCRR 624.6 [b]; *see,* ECL 70-0119 [1]; *see also, Matter of Concerned Citizens against Crossgates v Flacke,* 89 AD2d 759, 760, *affd* 58 NY2d 919). The burden is upon those such as petitioners to provide a clear explanation of the issues sought to be adjudicated and not merely make obscure references to matters which should be considered and then, thereafter, seek to set aside the determination on the ground that there was a failure to consider those matters *(see, Vermont Yankee Nuclear Power Corp. v NRDC,* 435 US 519, 553). Here, petitioners utterly failed in their burden to explain why these issues should be adjudicatory as opposed to being irrelevant to the matter at hand or mere policy arguments among the counties involved. In addition, as to the argument that the "fly ash" produced would be a hazardous waste, it appears that, in any event, such an argument is without merit and the Commissioner properly excluded the issue *(see,* 42 USC § 6921 [i]; 40 CFR 261.4 [b] [i]; 6 NYCRR 371.1 [e] [2] [i]; 45 Fed Reg 33099 [1980]).

Finally, and equally without merit, is petitioners' argument that the applicant's engineering plans were prepared by a person not registered to practice professional engineering in New York. Engineering of the facility is provided by the applicant's parent company and the facility's engineer is stated to be Joseph Struzka of the same address as the applicant in Livingston, New Jersey. Struzka is licensed to practice professional engineering in New York. Accordingly, the applicant is in compliance with State regulations *(see,* 6 NYCRR 360.3 [d] [2] [ii]).

CASEY, LEVINE and HARVEY, JJ., concur.

Determination confirmed, and petition dismissed, without costs.