In the Matter of VILLAGE OF HUDSON FALLS et al., Respondents, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Appellants, and COUNTIES OF WARREN AND WASHINGTON INDUSTRIAL DEVELOPMENT AGENCY et al., Intervenors-Appellants.

Third Department, June 14, 1990

APPEARANCES OF COUNSEL

*Robert Abrams*, Attorney-General (*Francis J. Keehan, Peter H. Schiff* and *Douglas H. Ward* of counsel), for appellants.

*Lewis B. Oliver, Jr.,* and *Harriet B. Oliver* for respondents.

*Miller, Mannix & Pratt, P. C.* (*Benjamin R. Pratt, Jr.,* of counsel), for intervenors-appellants.

## OPINION OF THE COURT

WEISS, J.

As long ago as September 1984, representatives of petitioner Village of Hudson Falls (hereinafter the Village) in Washington County and intervenor Adirondack Resource Recovery Associates (hereinafter ARRA) began discussions regarding a proposal by ARRA to construct a facility on a 16-acre industrially zoned parcel owned by the Village to incinerate 400 tons per day of nonhazardous refuse and municipal solid waste generated within Warren, Washington and Essex Counties. Following extensive procedures pursuant to the State Environmental Quality Review Act (hereinafter SEQRA) (ECL art 8; 6 NYCRR part 617), respondent Commissioner of Environmental Conservation (hereinafter the Commissioner) issued a determination on or about November 17, 1986 granting ARRA specific authority to construct and operate a proposed solid waste management facility. On or about December 21, 1984, intervenor Counties of Warren and Washington Industrial Development Agency issued and sold $50 million worth of industrial revenue bonds to finance the project.[1] The Commissioner's determination withstood a subsequent challenge by certain individuals and a not-for-profit association opposed to the project (*see, Matter of Congdon v Washington County*, 130 AD2d 27, *lv denied* 70 NY2d 610). Subsequently, in late 1986, opponents again mounted a challenge to the project contending, *inter alia,* that the Commissioner was without authority to grant a construction permit because of noncompliance with statutory requirements (*see,* ECL 27-0707 [2] [b]), particularly by his failure to require an environmental impact statement

---

1. In 1989, the funding was subsequently increased to $79.5 million.

in light of the State solid waste management plan in effect at the time the application was filed. This court confirmed the Commissioner's determination which rejected that contention *(see, Matter of Citizens for Clean Air v New York State Dept. of Envtl. Conservation,* 135 AD2d 256, *lv dismissed* 72 NY2d 853).

In November 1986, the Commissioner had issued to ARRA various permits required for the construction of the facility, some of which have annual expiration dates.[2] In April 1988, Essex County, 1 of the 3 counties generating waste to be processed at the proposed facility and whose landfill was to receive the fly ash, bottom ash and bypass wastes produced by the facility, withdrew from the project.

In October 1988, the Village, who had initially been designated lead agency[3] *(see, Matter of Congdon v Washington County, supra),* determined that a supplemental environmental impact statement (hereinafter SEIS) was required because of changes in the project which had occurred since it had given its initial approval in 1984. On October 26, 1988, the Village sent a letter to the Commissioner advising him of its concerns and requesting that a SEIS be prepared. This letter did not discuss the subject of permits or renewals. On November 16, 1988, the Commissioner responded with his own letter and referred the matter to the Regional Director of respondent Department of Environmental Conservation (hereinafter DEC). The Commissioner, by his Deputy Regional Permit Administrator, also issued a second one-year renewal of the subject permits on November 15, 1988.

In March 1989, petitioners commenced this CPLR article 78 proceeding seeking an order annulling the Commissioner's renewal of the six permits on the grounds that, *inter alia,* such renewal was made in violation of various SEQRA regulations contained in 6 NYCRR parts 617 and 621 and without having taken a "hard look" at the impact the changes result-

---

2. The permits at issue in this case are two permits to *construct* sources of air contamination associated with the two incinerators, three permits to *construct* sources of air contamination associated with ventilation systems at the facility, and a protection of waters permit. Not at issue are the permit to construct a solid waste management system, a State pollutant discharge elimination system permit for industrial waste waters and a water quality certificate.

3. The role of the Village as lead agency had ended pursuant to 6 NYCRR 617.6 (b) (3). Its current role as an involved agency pursuant to 6 NYCRR 617.2 (t) and 617.3 (a) has not been reestablished.

ing from Essex County's withdrawal from the project would have on the environment. Following service of respondents' answer on the merits, Supreme Court granted the petition concluding that the renewal of the permits was invalid unless and until there had been compliance with the provisions of ECL 27-0707 (1). Supreme Court stated that DEC had failed to take a "hard look" at the modifications in the original project which had occurred since the issuance of the original permits. Subsequently, the relief granted in the judgment was enlarged to include an injunction precluding further construction of the facility absent full compliance with the aforesaid SEQRA requirements.[4] Both respondents and intervenors have appealed.

On February 8, 1990, after respondents had perfected this appeal but prior to oral argument, the Commissioner again renewed the six subject permits previously renewed in 1988, which had expired, after scrutinizing them pursuant to the directive from Supreme Court to take a "hard look". The Village claimed that the renewal of the permits rendered this controversy moot and moved by order to show cause to dismiss this appeal. That motion was made returnable and heard together with this appeal.

■ Initially, we reject the mootness contention because the validity of the 1990 renewals must depend, at least in part, upon the validity of the 1988 renewals.[5] Even were we to conclude that resolution of the dispute would not affect any substantial rights of the parties (see, Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners, 72 NY2d 307, 311, cert denied 488 US 966; see also, Matter of Armstrong v Town of Hoosick Hous. Auth., 84 AD2d 886, 887), we would nevertheless find that this case falls within the well-recognized exception to the mootness doctrine (see, Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715). The issue of the extent of administrative consideration to be accorded a permit renewal application is one of continuing public interest and is likely to evade appellate review where, as here, the permits involved are valid for only one year. In this instance, for example, the permits were

---

4. The record indicates that construction of the facility commenced in July 1989 and that approximately $20 million has been invested in the project to date.

5. The 1988 renewals were extended to February 1990 because there were no renewals made in 1989.

renewed on November 15, 1988 but oral argument was not heard until after the permits at issue expired.

▮ It is essential to recognize that the challenge in this proceeding must focus upon the six permit renewals. When there has been no material change in the permit conditions or in the scope of the permitted activities, permit renewal applications are classified as Type II actions *(see,* 6 NYCRR 617.13 [d] [16]).[6] Type II actions have been determined by regulation not to have a significant effect on the environment and do not require a SEQRA determination of significance, an environmental impact statement or a findings statement *(see,* 6 NYCRR 617.3 [j]; *see also,* ECL 8-0113 [2] [c] [ii]). Accordingly, the issue distills to whether DEC proceeded properly in treating these renewal applications as Type II actions, rather than as applications for new permits pursuant to 6 NYCRR former 621.12 (a) (3) (currently codified as 6 NYCRR 621.13 [e]) *(see,* ECL 70-0115 [2] [b]). According to the relevant language of 6 NYCRR former 621.12 (a) (3), DEC may consider any application for permit renewal as though it were a new application for a permit if it determines that:

"(i) the application involves a material change in existing permit conditions or in the scope of the permitted actions; [or]

"(ii) there has been a material change in environmental conditions, relevant technology or applicable law or regulations since the issuance of the existing permit".

Petitioners contend that they have shown that there were material changes in environmental conditions and technology and that DEC was required to take a "hard look" to determine if, in light of the changes, a significant impact on the environment would result from the renewals and to give due consideration to the prevention of environmental damage.

▮ We cannot too strongly emphasize that the entirety of the over-all project was comprehensively and finally reviewed *(see, Matter of Citizens for Clean Air v New York State Dept. of Envtl. Conservation,* 135 AD2d 256, *supra)* prior to the issuance of the original permits. Both ECL 70-0115 (2) (a) and 6 NYCRR former 621-12 (a) (3) require that the subject renewals must be examined within their own context isolated from issues which do not affect them. The situation is unlike the

---

6. Despite petitioners' conclusory allegations, there were no modifications or changes in the extensive permit conditions or the scope of permitted actions. The renewals retained in full force and effect all of the terms and conditions mandated in the original permits.

initial environmental impact review process for the whole project, where segmentation would be inappropriate and the project must be reviewed in its cumulative whole *(see,* 6 NYCRR 617.3 [k]).

We discern a clear distinction between the exhaustive SEQRA review required for Type I actions and the "hard looks" associated therewith, and the determination involving Type II actions and SEQRA analysis associated with permit renewals. A degree of finality and stability is properly created once a permitted activity has successfully met the initial SEQRA requirements *(see, Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 425). In the absence of a material change in conditions or a violation of the terms of a permit, a renewal should be granted without undue burdens imposed upon the applicant *(see, Matter of Atlantic Cement Co. v Williams,* 129 AD2d 84, 88, 92). The "hard look" standard applied by Supreme Court would require an affirmative search of all possible newly discovered information and changes, and place significant and undue burden and uncertainty upon a permit holder and a major administrative burden upon DEC in processing routine Type II actions. Accordingly, we hold that it was error for Supreme Court to have annulled the permit renewals.

In so concluding, we do not suggest that the Commissioner's determination is beyond review or that petitioners are without a remedy. Here, there has been no demonstration of a direct nexus between the withdrawal of Essex County and the subject permits, nor between the other environmental concerns expressed by petitioners[7] and the subject permits. Petitioners' letter of October 26, 1988 did not alert DEC to any material changes affecting the permits or to the issues raised in this proceeding. There was nothing before DEC demonstrating any material changes or facts contemplated by ECL 70-0115 (2) (a) which would trigger a more critical examination of the renewal application. Similarly, we find that petitioners have not demonstrated that ARRA failed to meet its duty of disclosure or that it withheld information involving material changes relating to the permits. Petitioners have failed to satisfy their burden of proving that respondents' determination was arbitrary and capricious, or otherwise in error of law.

It remains equally clear that petitioners, if in possession

---

7. Most of the environmental concerns raised by the petitions did not exist or information was not accessible to DEC at the time of the renewals.

of relevant and material changes or information affecting the project and any permit, may always utilize the procedure provided by 6 NYCRR 621.14 (a) (6 NYCRR former 621.13 [a]) to address legitimate environmental concerns and provide DEC with the necessary information for a critical examination. This procedure would, in the presence of valid relevant information, require DEC to critically examine those concerns and issue an appropriate response.[8] Any determination by DEC would thereafter be reviewable.

For all the foregoing reasons, the judgment should be reversed, and the petition dismissed.

YESAWICH, JR., J. (concurring in part and dissenting in part). We, too, agree that this case is not moot. Contrary to the view adopted by our colleagues, however, we believe that DEC violated SEQRA when it renewed the six permits at issue without first taking a "hard look" at the impact, if any, that changes in the project which have occurred since it was first proposed in 1984 will have on the environment.

The "hard look" analysis (see, Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 428-430) is undeniably applicable to some DEC permit renewal determinations under 6 NYCRR former 621.12 (now codified in its amended form as 6 NYCRR 621.13). SEQRA, and the regulations promulgated thereunder, require DEC to issue a SEIS, even after a final environmental impact statement (hereinafter EIS) has been filed, whenever an environmentally significant modification occurs (see, Matter of Jackson v New York City Urban Dev. Corp., supra, at 429). The agency is obliged to take a "hard look" at the resulting environmental impact to determine whether the proposed modification is sufficiently profound (supra, at 430). Only upon finding that any effect on the environment would be insignificant can DEC obviate the necessity for a SEIS.

Here, Essex County's withdrawal from the project modifies the original plans for which the final EIS was issued (cf., Matter of Atlantic Cement Co. v Williams, 129 AD2d 84, 92). As a consequence of that withdrawal, the project may have a different environmental setting than that which DEC confronted in 1984. While the majority concludes that DEC may assume that this modification is insignificant because it does

8. This procedure is available to require consideration of the effect which the withdrawal of Essex County will have on the project.

not alter the original conditions set forth in the permit, we believe that the procedure outlined above pertains to ARRA's permit renewal application. Thus, DEC may ultimately treat the permit renewal requests as a Type II action, which does not require a SEIS *(see,* 6 NYCRR 617.13 [a], [d] [16]), but before doing so it must make a finding, rationally based, that "there has been [no] material change in environmental conditions" (6 NYCRR former 621.12 [a] [3] [ii]). As no such finding was made here—all that transpired was an exchange of correspondence—the renewal determinations were made in contravention of lawful procedure *(see,* CPLR 7803 [3]) and accordingly should be null and void *(see, Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 369).

It is not our intention to suggest, nor do we, that a SEIS must necessarily issue in this instance, but only that DEC take a "hard look" *(see generally, H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232) to consider the significance of the withdrawal of Essex County before determining whether the permits at issue should be renewed without the need for a SEIS.

Accordingly, we would affirm the judgment and amended judgment.

MIKOLL and LEVINE, JJ., concur with WEISS, J.; MAHONEY, P. J., and YESAWICH, JR., J., concur in part and dissent in part in an opinion by YESAWICH, JR., J.

Motion to dismiss appeal as moot denied, without costs.

Judgment and amended judgment reversed, on the law, without costs, determination confirmed and petition dismissed.