*976 In a hybrid proceeding pursuant to CPLR article 78, inter alia, in the nature of mandamus to compel the New York State Department of Environmental Conservation to issue surf clam permit No. 156650 for the year 2008 in the name of the F/V Susan II, to review a determination of the New York State Department of Environmental Conservation, in effect, allowing surf clam permits Nos. 156650 and 156500 for the year 2007 to expire in the absence of a hearing on a previously issued notice of intention to revoke those permits, and action for a judgment declaring, among other things, that surf clam permits Nos. 156650 and 156500 for the year 2007 are valid and that the New York State Department of Environmental Conservation may not maintain any further proceedings to revoke surf clam permits Nos. 156650 and 156500 for the years 2008 and thereafter, the petitioner/plaintiff appeals from an order and judgment (one paper) of the Supreme Court, Suffolk County (Pitts, J.), entered April 3, 2009, which dismissed the proceeding/action on the ground that it had been rendered academic and denied, as academic, the defendants/respondents ’ motion to dismiss the petition/complaint pursuant to CPLR 3211 (a) (7) and 7804 (f).
Ordered that the order and judgment is affirmed, with costs.
This case involves a claim by the petitioner, Shellfish, Inc. (hereinafter Shellfish), that the New York State Department of Environmental Conservation (hereinafter the DEC) improperly allowed the expiration of certain surf clam permits authorizing Shellfish to employ certain specific oceangoing vessels to harvest surf clams and ocean quahogs during 2007 (hereinafter the 2007 permits), and declined to issue a certain permit for 2008 (hereinafter the 2008 permit). The case has its genesis in 2006, when Shellfish owned two fishing vessels, named Susan H and Susan II, respectively. In August 2006 Shellfish sold the Susan II. Despite the sale, however, in December 2006 Shellfish applied for and was granted the 2007 permits for both vessels, effective during the 2007 fishing season. In September 2007 the DEC notified Shellfish of its intent to revoke the 2007 permits based upon, inter alia, Shellfish’s submission of a permit request for the Susan II after the vessel had been sold. Although Shellfish timely sought a hearing pursuant to DEC regulations, no hearing was ever scheduled. In November 2007 Shellfish sent *977 the DEC a “Notification of Sale/Transfer/Replacement of an Eligible Vessel,” seeking to transfer the Susan II permit to a vessel called C-Hawk. This document states on its face that “the information must be submitted 10 days prior to the sale, transfer or replacement of vessel.” The 2007 permits were allowed to expire pursuant to their own terms at the end of the 2007 calendar year.
In December 2007 Shellfish received preprinted application forms for 2008 permits for both the Susan H and the Susan II vessels. Shellfish remitted the forms to the DEC, listing the Susan H and another vessel, which was identified only by registration number. The DEC returned the application as incomplete, whereupon Shellfish refiled permit applications for the Susan H and the C-Hawk. The DEC issued a permit only for the Susan H, and informed Shellfish that it would not issue a permit for the C-Hawk because the status of the Susan II had yet to be clarified. In May 2008 Shellfish commenced this proceeding/action against the DEC, its commissioner, and the acting bureau chief of its Bureau of Marine Resources (hereinafter collectively the DEC respondents) seeking, inter alia, to compel the DEC to issue the 2008 permit, to review its determination, in effect, to allow the 2007 permits to expire on December 31, 2007, in the absence of a hearing on the DEC’s notice of intention to revoke the 2007 permits, and for a declaration, among other things, resolving the status of the 2007 permits and the DEC’s authority to revoke any permit in the future. The DEC respondents moved, inter alia, to dismiss the petition pursuant to CPLR 3211 (a) (7) and 7804 (f). The Supreme Court determined that the issues raised by the petition/complaint had been rendered academic, inasmuch as the 2007 and 2008 fishing seasons had ended. Accordingly, the Supreme Court dismissed the proceeding/action, “thereby render[ing] the [DEC respondents’] motion to dismiss academic.” We affirm, but for a reason different from that expressed by the Supreme Court.
Under the particular circumstances of this case, the issues raised by the present appeal have not been rendered academic. As stated by the Court of Appeals in Matter of Hearst Corp. v Clyne (50 NY2d 707, 714-715 [1980]):
“[When an] appeal is moot it may not properly be decided by this court unless it is found to be within the exception to the doctrine which permits the courts to preserve for review important and recurring issues which, by virtue of their relatively brief existence, would be rendered . . . nonreviewable (see Roe v Wade, 410 US 113, 125).
*978 “In this court the exception to the doctrine mootness has been subject over the years to a variety of formulations. However, examination of the cases in which our court has found an exception to the doctrine discloses three common factors: (1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues.”
With respect to the first criterion, there is a likelihood that recurring issues will create a dispute between the parties, in view of the fact that, in 2009, the DEC amended its regulations regarding the issuance of surf clam permits to limit their issuance and distribution only to those entities or individuals who have had a permit in the prior year (see 6 NYCRR 43-2.4 [g]). Accordingly, since Shellfish was denied a permit for its second boat in 2008 which, in turn, was based upon the allegedly improper 2007 permit application for the Susan II, Shellfish may be repeatedly denied a permit for its second boat under the amended 2009 rule (see Matter of Village of Hudson Falls v New York State Dept, of Envtl. Conservation, 158 AD2d 24 [1990], affd 77 NY2d 983 [1991]). It is also conceivable that a similarly situated permit applicant will face a similar dilemma, to wit, the allegedly improper denial of a permit in a prior year which will negatively affect future permit requests.
This case also presents a “phenomenon typically evading review.” In light of the relatively short duration of surf clam permits, which are valid for only one calendar year, it is likely that any controversy regarding the issuance or denial of such yearly permits will not be resolved by a court until after the particular year at issue has already ended (see Matter of Sheldon S., 9 AD3d 92, 95 [2004]). Finally, given the contentions raised by the parties regarding the interpretation and implementation of the various statutes and regulations applicable to the issuance of the subject permits, we find that the case presents significant and novel questions which should be addressed (see City of New York v Maul, 14 NY3d 499 [2010]; see also Le Drugstore Etats Unis v New York State Bd. of Pharm., 33 NY2d 298, 301 [1973]; Matter of Village of Hudson Falls v New York State Dept, of Envtl. Conservation, 158 AD2d 24 [1990]).
Turning to the merits, initially we note that, under the circumstances of this case, where the dispositive facts were undisputed and the arguments of the parties were fully set forth in the record before the Supreme Court, it is appropriate that we reach the merits of the petition (see Matter of Nassau *979 BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d 100, 102 [1984]; Matter of Kuzma v City of Buffalo, 45 AD3d 1308, 1310-1311 [2007]; see also Tendler v Bais Knesses of New Hempstead, Inc., 52 AD3d 500 [2008]; Matter of Laurel Realty, LLC, v Planning Bd. of Town of Kent, 40 AD3d 857 [2007]; Harris v Hallberg, 36 AD3d 857, 858 [2007]). On the merits, we conclude that the DEC properly denied Shellfish’s application for the 2008 permit for its second vessel.
It is undisputed that the appellant did not comply with 6 NYCRR 43-3.5 (c)—a regulation which requires that an owner of an eligible vessel (i.e., a permit holding vessel) “shall notify the [DEC] in writing at least 10 days prior to the sale, transfer or replacement of an eligible vessel.” Indeed, Shellfish not only sold the Susan II in August 2006 without notifying the DEC, but it also obtained one of the 2007 permits for the Susan II and submitted weekly trip reports for that vessel covering the period from January 1, 2007, through July 28, 2007. Although it is also undisputed that the DEC failed to follow its own regulations regarding both its proposed revocation of the 2007 permits or the denial of the 2008 permit for the C-Hawk, the fact remains that the denial of the application for the 2008 permit for the second vessel was occasioned by Shellfish’s initial failure to comply with the regulation applicable to the replacement of permit-eligible vessels. Therefore, despite the prospective importance of the denial of the 2008 permit in light of the amendment to the DEC’S regulations limiting issuance of new permits to current permittees (see 6 NYCRR 43-2.4 [g]), the DEC’s decision to deny the application for the 2008 permit for Shellfish’s second vessel did not, contrary to Shellfish’s contention, violate a duty enjoined upon the DEC by law (see CPLR 7803 [1]), and was not arbitrary and capricious (see CPLR 7803 [3]).
There is no merit to Shellfish’s contention that the regulations set forth in 6 NYCRR part 43 were not in effect in 2007 or 2008. According to the prefatory language of 6 NYCRR 43-3.1, the regulations at issue were only to be in place “until such time as a surf clam management plan is adopted pursuant to section 13-0308 of the Environmental Conservation Law” (emphasis added). Shellfish thus argues that, since the DEC adopted a “Fishery Management Plan for the Mechanical Harvest of the Atlantic Surfclam in New York State Waters of the Atlantic Ocean” in 2004 (hereinafter the Management Plan), the regulations set forth in 6 NYCRR 43-3.1—including those which obligated Shellfish to notify the DEC of an eligible *980 vessel sale—were no longer in effect at the time it sought to replace the permit for the Susan II in 2007 and 2008. However, Shellfish ignores the fact that the Management Plan clearly states, at section 2.3.1, that “the current limited entry, limited to vessels eligible to participate under the provisions of 6 NYCRR subpart 43-3, shall continue” (emphasis added). Indeed, almost all of the provisions of 6 NYCRR part 43 are mirrored in the Management Plan, including the following:
“DEC Approval of Replacement or Sale of Vessels: The owner of an eligible vessel shall notify the department in writing at least ten days prior to the sale, replacement or transfer of the vessel.
“Replacements, sale, and transfer of eligible vessels may be approved only as allowed by 6 NYCRR Subpart 43-3” (emphasis added).
Accordingly, under both the applicable regulations and the Management Plan, Shellfish was obligated to notify the DEC of its intention to sell the Susan II if it wanted to be able to use the Susan II’s permit for the C-Hawk. Having failed to comply with such regulation, Shellfish is precluded from seeking to revive the otherwise academic question of whether it was properly denied the 2008 permit for a second vessel.
In light of our determination, the allegations set forth in the causes of action seeking a declaratory judgment have been rendered academic. Shellfish’s remaining contentions either are without merit, have been rendered academic, or need not be reached in light of our determination. Skelos, J.P., Santucci, Dickerson and Leventhal, JJ., concur.