Matter of Sand Land Corp. v New York State Dept. of Envtl. Conservation

2026 NY Slip Op 02006

April 2, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Sand Land Corporation et al., Appellants,

v

New York State Department of Environmental Conservation et al., Respondents.

Decided and Entered:April 2, 2026

CV-24-0956

Calendar Date: February 11, 2026

Before: Garry, P.J., Aarons, Ceresia, Fisher And Mackey, JJ.

Matthews, Kirst, Cooley & Choron, PLLC, East Hampton (Brian E. Matthews of counsel), for appellants.

Letitia James, Attorney General, Albany (Patrick A. Woods of counsel), for New York State Department of Environmental Conservation, respondent.

Volz & Vigliotta, PLLC, Nesconset (David H. Arntsen of counsel), for Town of Southampton, respondent.

Braymer Law, PLLC, Glens Falls (Claudia K. Braymer of counsel), for Citizens Campaign for the Environment and others, respondents.

Super Law Group, LLC, New York City (Reed W. Super of counsel), for Joseph Phair, respondent.

Rupp Pfalzgraf, LLC, Albany (William F. Demarest III of counsel), for 101Co, LLC and others, respondents.

[*1]

Garry, P.J.

Appeal from a judgment of the Supreme Court (James Ferreira, J.), entered April 11, 2024 in Albany County, which, among other things, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, declared the operative nature of a previously issued Mined Land Reclamation permit.

Petitioner Sand Land Corporation owns a sand and gravel mine on a 50-acre parcel in the Town of Southampton, Suffolk County. The mine has operated continuously since the 1960s, preceding the 1972 rezoning that prohibited mining in the district in which the parcel is located and the 1975 enactment of the Mined Land Reclamation Law (see ECL 23-2701 et seq.). In 1981, Sand Land's predecessor in interest obtained a Mined Land Reclamation permit from respondent Department of Environmental Conservation (hereinafter DEC) to mine 20 acres of the site. That permit was renewed several times thereafter. In 1998, the permit was transferred to Sand Land; at that time, the permit authorized mining on 31.5 acres of the parcel to a depth of 160 feet above mean sea level (hereinafter amsl). The permit was again renewed in 2003, 2008 and 2013.

In 2014, Sand Land submitted an application to DEC to modify its permit to increase the depth of mining to 120 feet amsl and to expand the mining footprint to include additional acreage, including an approximately 3-acre area known as the "stump dump," which Sand Land used to receive, store and process vegetative organic waste materials (i.e., create mulch). DEC denied that application. Pending administrative review, DEC issued Sand Land notice of its intent to modify Sand Land's permit to require that mining activities at the site cease and reclamation activities begin. With the permit set to expire, Sand Land also submitted a renewal application. The foregoing issues were ultimately resolved by a 2016 order on consent, in which Sand Land agreed to cease the receipt, storage and processing of vegetative organic waste materials and to perform certain groundwater monitoring, and DEC agreed to renew Sand Land's permit to include the stump dump area within the life of mine and to process a modification permit application for increased depth of 120 feet amsl. In March 2019, DEC issued a renewed permit to Sand Land reflecting the correction to the permitted acreage of 34.5 acres, and Sand Land submitted a new modification application.

Meanwhile, the Town and several concerned landowners and organizations commenced a CPLR article 78 proceeding against Sand Land and DEC to, among other things, annul the March 2019 renewal permit, contending that Sand Land improperly sought to expand the mine's footprint in a renewal application in order to avoid the restrictions of ECL 23-2703 (3), which prevents DEC from considering applications for permits to mine in covered counties when "local zoning laws or ordinances prohibit mining uses within the area proposed to be mined." In June 2019, DEC issued Sand Land a permit modification authorizing [*2]mining within the 34.5-acre footprint to a depth of 120 feet amsl, effective June 5, 2019. A supplemental petition to annul the June 2019 permit modification was filed.

During the pendency of that litigation, DEC issued a second permit modification, effective May 1, 2020, removing the prior permit provision that allowed vegetative waste to be brought to the site for reclamation purposes, directing that all future reclamation would be done using loam and sand already on site, and limiting importation of materials to the site to include crushed stone, crushed concrete aggregate and finished compost to create salable aggregate products. Relevant here, the second permit modification expressly provided that "[a]ll mining activities at the site" would "continue in accordance with the permit modification issued on 6/5/2019." The May 2020 permit modification was not made part of or otherwise raised in the pending litigation.

In May 2021, this Court annulled the 2019 permits, agreeing that ECL 23-2703 (3) encompassed renewal and modification applications and that DEC was precluded from issuing the permits in view of the Town's general mining prohibition (Matter of Town of Southampton v New York State Dept. of Envtl. Conservation, 194 AD3d 1310, 1312-1313 [3d Dept 2021], mod 39 NY3d 201 [2023]). The Court of Appeals upheld that annulment in February 2023, albeit with different reasoning (Matter of Town of Southampton v New York State Dept. of Envtl. Conservation, 39 NY3d 201 [2023]). The Court of Appeals concluded that DEC may process renewal and modification applications when such applications seek to mine land that falls within the scope of an undisputed prior nonconforming use — and, thus, the use is not actually prohibited (id. at 208-213) — but, because the scope of Sand Land's prior nonconforming use had never been established, remand to DEC for further proceedings to that end was necessary (id. at 213-214).

Following the Court of Appeals' decision, DEC took the position that, because the May 2020 modification permit expressly continued mining in accordance with the June 2019 modification, it exclusively derived its authority from a nonexistent source, and was thus extinguished by operation of law, leaving the 2013 renewal permit as the operative permit. DEC later issued Sand Land notices of violation for excavation and importation activities that would have been authorized under the 2020 modification permit but were not authorized under the 2013 permit.

Petitioners in turn commenced the present combined CPLR article 78 proceeding and declaratory judgment action, seeking annulment of those violations and a declaration that the 2020 permit was controlling during the relevant period unless and until revoked through proper administrative process. Many of the petitioners from the prior hybrid proceeding were then granted permission to intervene. DEC answered, setting forth affirmative defenses, including judicial estoppel, and counterclaimed for, among [*3]other relief, a declaration that the 2013 renewal permit governs mining at the site. Supreme Court agreed with respondents that the 2020 permit modification was a nullity and declared the 2013 permit, as modified by the 2016 order on consent incorporating the stump dump within the life of mine, to be operative, otherwise rejecting the claim of judicial estoppel. The court came to differing conclusions regarding the notices of violation. Petitioners appeal, challenging only the court's declaration.FN1

Supreme Court correctly held that Sand Land's 2013 permit, as modified by the 2016 order on consent, governed mining at the site during the pertinent time period. The 2020 permit modification expressly provided that all mining activities at the site would continue in accordance with the permit modification issued in June 2019 and did not independently authorize expanded mining rights apart from the annulled permits. As the Court of Appeals made clear, DEC's authority to process and grant the 2019 permits in this county, covered by ECL 23-2703 (3), was contingent upon a determination that the proposed mining fell within the scope of a lawful prior nonconforming use and thus was not in fact prohibited by local zoning (Matter of Town of Southampton v New York State Dept. of Envtl. Conservation, 39 NY3d at 214). Because no such determination had been made, the statutory condition precedent to DEC's authority was unsatisfied, and the permits were issued in excess of the agency's power. The permits were therefore properly treated as legal nullities (see Faison v Lewis, 25 NY3d 220, 224 [2015]; Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie, 169 AD3d 1182, 1185 [3d Dept 2019]; see also Matter of Socha v Town of Starkey, 239 AD3d 1298, 1300-1301 [4th Dept 2025]; Matter of Reiss v Keator, 150 AD2d 939, 941-942 [3d Dept 1989]). Even assuming the 2019 permits were merely voidable rather than void ab initio, once judicially annulled, the permits ceased to exist and therefore could no longer serve as the foundation for mining activities under the 2020 modification, which, by its own terms, derived entirely from them (see Matter of Village of Hudson Falls v New York State Dept. of Envtl. Conservation, 158 AD2d 24, 28 [3d Dept 1990], affd 77 NY2d 983 [1991]). Thus, contrary to petitioners' contention, the 2020 permit did not require formal suspension or revocation under the Uniform Procedures Act; those procedures govern agency-initiated modification, suspension or revocation of an existing permit, not the automatic legal consequence of a judicial annulment (see ECL 70-0115 [1]; 6 NYCRR 621.13 [c]).

In light of our conclusion, we need not reach DEC's alternative ground for affirmance concerning judicial estoppel (see generally 12 New St., LLC v National Wine & Spirits, Inc., 196 AD3d 883, 884-885 [3d Dept 2021]). We nevertheless must at least briefly recognize that petitioners' present position concerning the operative permit during the relevant period [*4]is plainly in tension with the position they successfully advanced in at least one related proceeding. In June 2021, two of the intervenor-respondents commenced a citizen suit pursuant to ECL 71-1311 (2), seeking to enjoin Sand Land from operating the mine on the theory that this Court's annulment of the 2019 permits left it without any authority to do so. In opposition, Sand Land argued that this Court's order rendered DEC's 2019 permitting action without legal effect but that the 2013 permit remained in effect by operation of State Administrative Procedure Act § 401 (2). Supreme Court expressly adopted that position in dismissing the relevant claims. Petitioners now advance a materially different view as to which permit governed during that same period. That shift exceeds mere refinement of the prior argument and implicates the concerns animating this equitable doctrine (compare Huizhi Liu v Guoqing Guan, 225 AD3d 749, 751-752 [2d Dept 2024]; White Rock Ins. Co. PCC Ltd. v Lloyd's Syndicate 4242, 202 AD3d 563, 566 [1st Dept 2022]).

Aarons, Ceresia, Fisher and Mackey, JJ., concur.

ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: At oral argument, DEC highlighted that the 2020 permit expired in March 2024 and contended that, in light of petitioners' abandonment of any challenge to the upheld violations, and in the absence of any cross-appeal, the need for a declaration concerning the operative permit is moot. However, the record does not demonstrate, and DEC has not shown, that the status of the 2020 permit could have no continuing legal consequences, including with respect to future permitting applications. We accordingly decline to dismiss this appeal as moot.