OPINION OF THE COURT
Robert H. Wagner, J.
Petitioners Fred B. Kravetz and Michael D. Kravetz are the owners of real property at 520 East Avenue, within the H-4 zone of the Zoning Ordinance of the City of Rochester and contiguous to the property located at 550 East Avenue. Petitioner Elizabeth Holahan is the owner of real property at 70 East Boulevard, which property is contiguous to the H-4 zone. Petitioner Prince Street Association is an unincorporated association formed for the purpose of protecting the neighborhood. They seek reversal of the determinations by the Director of Planning and Zoning for the City of Rochester and the Rochester Environmental Commission that the proposed amendment to section 115-75 of the city zoning ordinance, H-4 Medium High Density Historic District, which would add to the list of allowable special permit uses in the district the use of hotels, would have no significant adverse effect on the environment and an environmental impact study would not be required.
Respondents Plenge and Sullivan are the applicants to amend section 115-75 of the Zoning Ordinance of the City of Rochester. Marine Midland Bank is the owner or part owner of the property at 550 East Avenue which is proposed to be converted into a luxury hotel. Petitioners urge a reversal of the respondents’ determinations alleging a failure to properly consider the impact which hotels will have upon the environment and the H-4 historic district.
The record presented to the court indicates that the respondents Sullivan and Plenge applied for a text amendment to section 115-75 of the zoning ordinance to allow hotels in the H-4 zoning district of the city as a special use permit. On July 12, 1979, petitioners’ attorney, A. Vincent Buzard, then representing other clients, wrote a letter to John Spoelhof, Director of Planning and Zoning for the City of Rochester. Mr. Buzard indicated that it was his position that an environmental impact statement (EIS) was required prior to adoption of the text amendment under the Environmental Conservation Law and the regulations adopted thereunder.
Counsel for respondents Plenge and Sullivan then apparently contacted Mr. Spoelhof to ask whether any environmen *625 tal review would be required. By letter dated July 13, 1979, Mr. Spoelhof advised that the application for a text amendment would not require environmental review under the city’s Environmental Review Ordinance. His letter stated in relevant part as follows:
"The Type I Action Threshold relating to projects affecting historic resources is as follows:
" 'Any action . . . occurring wholly or partially within, or continguous to any facility or site listed on the National Register of Historic Places . . .’ or any other facility or site recommended for nomination to the National Register.
"Of course, a Type I action is a class of projects which generally will in almost every instance have a significant effect on the environment. Under the City Environmental Review Ordinance, environmental review is required for Type I Actions, but is optional for unlisted actions (le, those actions which are neither Type I or Type II) * * *
"Regarding the Type I Action Threshold described above, the City considers 'facility’ to mean a structure or building; and considers 'site’ to mean a specific parcel of property having a distinct ownership.
"As none of these properties are themselves listed on the National Register of Historic Places, nor are they adjacent to any properties so listed, the text amendment which is proposed by your clients is considered to be an Unlisted Action. Examination of the federal regulations which describe the National Register of Historic Places supports the City’s determination of this project to be an Unlisted Action. The National Register is described as a listing of 'districts, sites, buildings, structures or objects’ (60 USC 470a, (a)l). The State Environmental Quality Review Act (Part 617.12) in defining Type I Actions lists those actions which occur within or adjacent to only a 'facility or site’, clearly making a distinction from actions occurring solely within historical districts * * *
"Consequently, the City determines the proposed text amendment to be an Unlisted Action, and your clients are not required to submit their application to environmental review.”
Thereafter, by letter to Mr. Spoelhof dated August 10, 1979, counsel for respondents Plenge and Sullivan wrote that "since your office has indicated that environmental assessments of unlisted actions are to be prepared and submitted by appli *626 cants, we have prepared such an assessment and enclose it herewith, together with a check in the sum of $10.00.”[1]
By letter dated August 24, 1979, respondent Spoelhof issued a negative declaration. The Rochester Environmental Commission, by letter dated August 31, 1979 concurred with Director Spoelhofs finding that the proposed amendment to section 115-75 of the city zoning ordinance will have no significant adverse effect on the environment.
This proceeding was then commenced and heard before me at Special Term on October 24, 1979. At oral argument, counsel stated that the amendment to the zoning ordinance had been adopted by the Council of the City of Rochester and a hearing on respondents Plenge and Sullivan’s application for a special use permit was scheduled for November 5, 1979. Due to the posture of the application and to accommodate counsel, I permitted additional papers to be submitted and indicated I would render my decision as expeditiously as possible. Having carefully reviewed all the papers and material submitted and having duly considered oral argument and the pertinent laws and regulations, I render the following decision.
Three reasons are asserted in the petition why the negative declaration should be reversed. First, that it failed to take into account the impact of hotels upon the environment, including the impact of hotels upon facilities and sites listed in the National Register of Historic Places. Second, that the determinations were not preceded by an environmental impact statement as required by law. Third, that the decisions will have a negative pecuniary and monetary impact on the property owned by petitioners in that it will specially permit a downtown commercial use in areas zoned residential.
The answer of John Spoelhof, as Director of Planning and Zoning for the City of Rochester, states that an environmental impact statement is required only if the director determines that the proposed action may have a significant effect on the environment. He asserts that the applicants were requested to submit an environmental assessment form pursuant to section 48-7.B[l] of the city code to assist him in his environmental review of the text amendment. He further alleges that the regulations under the State Environmental Quality Review *627 Act (SEQRA) (ECL, art 8; 6 NYCRR 617.12 [b] [9]) in defining Type I actions in reference to the National Register of Historic Places lists those actions "occurring wholly or partially within, or contiguous to, any facility or site listed on the National Register of Historic Places” (emphasis supplied) and does not mention historic districts. Spoelhof defined facility as a building or structure and site as a specific parcel of property having a distinct ownership and, therefore, determined that the proposed text amendment was an "Unlisted Action” pursuant to section 48-6.B of the city code and not a Type I action. Based on this determination and the environmental assessment form submitted by respondents Plenge and Sullivan, Spoelhof asserts he acted properly in issuing a negative declaration and further asserts no further environmental reviews are required pursuant to section 48-7.D(3) of the city code.
The answer of respondents Edward Plenge and William Sullivan asserts three affirmative defenses. First, that the petitioners lack standing to commence this proceeding. Second, that it was their voluntary submission of a nonrequired environmental assessment form that led to the determinations now being challenged in this proceeding. Third, that the environmental assessment form submitted by them contains a full and fair summary of environmental considerations and the City of Rochester, through John Spoelhof as Director of Planning and Zoning and through the Rochester Environmental Commission, acted properly in reaching the determinations complained of.
The question of the petitioners’ standing is easily disposed of. A fair reading of the petition and the affidavit of Fred Kravetz, an expert in real estate, indicates that both he and Michael Kravetz have demonstrated the requisite standing to maintain this proceeding. Petitioner Holahan has submitted an affidavit which clearly establishes that she would suffer an actual injury if the negative declaration is sustained and that such injury comes within the zone of interest to be protected by the State Environmental Quality Review Act (see New York State Bldrs. Assn. v State of New York, 98 Misc 2d 1045, 1049).[2]
*628 Having determined that sufficient standing has been established, I turn to a consideration of the merits of the petition.
The Appellate Division, Fourth Department, recently had occasion to review the purpose and procedures of ECL article 8. In H.O.M.E.S. v New York State Urban Dev. Corp. (69 AD2d 222, 229), Justice Witmer stated: "In enacting ECL article 8 (L 1975, ch 612), the New York State Legislature declared a State policy to promote efforts which will prevent or eliminate damage to the environment and enhance human and community resources (ECL 8-0101) and its intent that all regulatory agencies conduct their affairs with an awareness that they are stewards of the air, water, land and living resources, and that they have an obligation to protect the environment for the use and enjoyment of this and all future generations (ECL 8-0103, subd 8; 8-0109, subd 1). Environment is defined in the statue as 'the physical conditions which will be affected by a proposed action, including land, air * * * noise * * * and existing community or neighborhood character’ (ECL 8-0105, subd 6). The primary method of achieving the intended surveillance and protection is the requirement of the preparation and submission of an environmental impact statement for any action, including that requiring agency approval if it may have a significant effect on the environment (ECL 8-0109, subd 2, et seq.). ”
The Planning and Zoning Board for the City of Rochester is an agency governed by the ECL (ECL 8-0105, subds 2, 3) and the regulations adopted thereunder (6 NYCRR Part 617) as well as the Rochester Environmental Ordinance (§ 48-3). The application to amend the text of the zoning ordinance is an "action” subject to such law and regulations (ECL 8-0105, subd 4, pars [i], [ii]; 6 NYCRR 617.2[b]; Rochester Environmental Ordinance, § 48-3).
At the outset it should be emphasized that the respondent Director of Planning and Zoning’s determination that the proposed action is an "Unlisted Action” and not a "Type I Action” even assuming arguendo its correctness,[3] is not at all determinative of whether his negative declaration was properly issued. The regulations (6 NYCRR 617.12) expressly state that the purpose of identifying Type I actions is to identify *629 those actions which are more likely to require the preparation of an environmental impact statement. The list of Type I actions is not exhaustive and the fact that an action has not been listed as a Type I action does not give rise to a presumption that it will not have a significant effect on the environment. Indeed, the regulation (6 NYCRR 617.12) states clearly: "For all individual actions which are Type I or unlisted, the determination of significance must be made by comparing the impacts which may be reasonably expected to result from the proposed action with the criteria listed in section 617.11 of this Part.” (Emphasis added.)
6 NYCRR 617.11 (a) states that "[i]n order to determine whether a proposed Type I or unlisted action may have a significant effect on the environment, the impacts which may be reasonably expected to result from the proposed action must be compared against the criteria in this section,[4] whether or not an EAF has been prepared.”[5] (Emphasis added.) Listed among the criteria considered indicators of significant effects on the environment are:
"(4) the creation of a material conflict with a community’s plans or goals as officially approved or adopted;
"(5) the impairment of the character or quality of important historical, archeological, architectural or aesthetic resources or of existing community or neighborhood character”.
In order to support the negative declaration, the record must demonstrate that the Director of Planning and Zoning: (1) identified the relevant areas of environmental concern, (2) took a hard look at them, and (3) made a reasoned elaboration of the basis for his determination (H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222, supra).
The basis of the negative declaration as stated by Mr. Spoelhof in his August 23, 1979 finding of no significant effect on the environment is as follows: "The negative declaration is *630 based on an environmental impact assessment[6] which indicates that there would be no significant adverse effects on neighborhood condition, aesthetic quality, transportation facilities or traffic from adoption of the amendment.”
The environmental impact assessment referred to in the negative declaration is attached to Exhibit D of respondents Plenge and Sullivan’s answer to petition. The expressed purpose of this form is to identify the anticipated nature, magnitude and extent of environmental impacts related to implementation of the proposed project. Toward this end, areas of environmental concern of the project are checked and analyzed on separate attached pages while unchecked components of the environment were determined not to be affected by the project. One of the areas checked was neighborhood conditions.[7] The so-called analysis accompanying the form reads as follows: "Neighborhood Conditions Since a special permit granted under the amended ordinance would involve only a change in use of an existing high-density residential building, there would be no change in the character or quality of soils, water, air, trees, wildlife, neighborhood character or other environmental conditions.”
Of even more significance is the fact that "historic and architectural value” is unchecked, indicating that such area of the environment would not be affected by the project.
The H-4 zone is listed on the National Register of Historic Places. It is a preservation district under the City of Rochester’s own landmark legislation. In his letter dated July 12, 1979, Mr. Buzard, counsel for the petitioners, brought these facts to the attention of respondent Spoelhof. Specifically, Mr. Buzard stated in relevant part that:
"(1) The proposed amendment affects one of only two sites within the City of Rochester listed on the National Register of Historic Places * * *
"(3) There has been no planning study or any other consideration of the impact of hotel use within the historic district. Various general claims have been made by the applicant *631 regarding lack of traffic, intensity of use, lack of future development but these are absolutely unsubstantiated by any study by a person with knowledge in either planning or preservation.
"(4) The application is opposed by the Landmark Society of Western New York and the Rochester Historical Society, both of which presumably have some expertise in the matter of preservation. The Landmark Society was involved in obtaining the listing of the particular East Avenue District upon the Register, and it was in no way consulted as a part of the preparation of the proposed amendment * * *
"(6) A fully documented study of the East Avenue District exists as a part of the application for placement on the National Register; this study should be reviewed and considered as a part of the determination of what impact the proposed amendments will have upon the district.”
It appears from the record and respondent Spoelhof s answer that the environmental form prepared by the applicants Plenge and Sullivan for the zoning amendment was the only item given consideration by him in determining whether the action may have a significant effect upon the environment. The negative declaration declares that the neighborhood character will not be changed based upon a conclusory statement made by the respondents Plenge and Sullivan without any supporting data or studies. Moreover, the negative declaration does not even refer to or recognize the historic character of the neighborhood or make any finding regarding the impact of the action upon the historic district. The fact that the action involves a historic district listed on the National Register of Historic Places and proclaimed a preservation district under the city’s landmark legislation, as well as many of the other environmental concerns expressed by Mr. Buzard, were not even considered.
The record submitted clearly indicates that respondent Spoelhof failed to identify the impairment of the character or quality of important historical and architectural resources as a legitimate area of environmental concern (see 6 NYCRR 617.11 [a] [5]). Having failed to identify this area of concern, respondent Spoelhof did not take the "hard look” required by law. Moreover, although the "neighborhood character” was identified as an area of environmental concern, the record discloses respondent, Spoelhof, merely adopted the applicants’ conclusory statement in this respect and demonstrates a total *632 ' failure to give a "hard look” as well as the failure to give a reasoned elaboration of the finding.
Additionally, the purpose of the H-4 district is to promote, maintain and enhance historic medium to high density residential neighborhoods located within a preservation district (see Rochester Zoning Ordinance, § 115-75). Retail businesses are excluded from the adoptive uses permitted in the H-4 district. The amendment to the zoning ordinance would not only permit luxury hotels to be established but would also permit drug stores, beauty shops, newsstands, health clubs, restaurants and bars, subject to a special permit. Consideration was not given to the fact that the amendment, on its face, conflicts with the community’s existing plans as officially adopted and what the environmental impact of that conflict may be (see 6 NYCRR 617.11 [a] [4]).
As Justice Wither noted in H.O.M.E.S. v New York State Urban Dev. Corp. (69 AD2d 222, 232, supra): " 'there is a relatively low threshold for impact statements’ * * * and * * * SEQRA * * * requires an EIS for any action 'which may have a signiñcant effect on the environment’ (ECL 8-0109, subd 2; emphasis added).”
As previously indicated, respondents’ determination that this action is not a Type I action under the regulations, is strained at best. In any event, respondent Spoelhof was made aware of the historic nature of the H-4 district and the character of the neighborhood and the determination that the proposed action will not have a significant effect on the environment is unsupported by the facts and was arbitrary and capricious.
Finally, I have considered and reject the argument that environmentál review is premature, inasmuch as environmental review may be required on the application for a special permit.
First, this was not a ground given by respondent Spoelhof for his negative declaration and, in fact, was not raised in his answer in this proceeding.
Second, the regulations (6 NYCRR 617.1 [c]) state that "[t]he basic purpose of SEQR is to incorporate the consideration of environmental factors into the existing planning, review and decision-making process of State, regional and local government agencies at the earliest possible time” (emphasis added; see Rochester Environmental Ordinance, § 48-2 [B]).
*633 Third, subsequent actions which are included in any long-range plan of which the action under consideration is a part or likely to be undertaken as a result or are dependent thereon, should be considered in the determination of whether an action will cause a significant effect on the environment (6 NYCRR 617.11 [b] [1], [2], [3]).
In fact, it would seem that there is specific provision in the regulations (6 NYCRR 617.15) and the Rochester Environmental Ordinance (§ 48-9) which may be applicable to the present situation. 6 NYCRR 617.15 (a) provides that a programmatic or generic environmental impact statement may be used to assess the environmental effects of:
"(1) a number of separate actions in a given geographic area which, if considered singly may have minor effects, but if considered together may have significant effects * * *
"(3) separate actions having generic or common impacts; or
"(4) programs or plans having wide application on restricting the range of future alternative policies or projects.”
6 NYCRR 617.15 (d) states: "Local agencies may find it advantageous to prepare programmatic or generic EIS’s on new, existing or significant changes to existing land use plans, development plans and zoning regulations so that individual actions carried out in conformance with these plans or regulations will require only site specific EISs as described in subdivision (c) of this section.” (Emphasis added.)
In direct response to respondents’ argument that it is not required and is unreasonable to expect the Director of Planning and Zoning to consider future projects before the permit application is filed, 6 NYCRR 617.15 (d) goes on to state:
"(1) It is recognized that EISs on these and similar kinds of actions will be of a different character than EISs on individual projects and their site specific impacts. Accordingly, they may be short, broad and a more general discussion of the logic and rationale for the choices advanced. They will be based on conceptual information in some cases. They will identify the important elements of the natural resource base as well as the existing and projected man-made features, patterns and character. They will discuss in general terms the constraints and consequences of any narrowing of future options. They will present and analyze in general terms a few hypothetical scenarios that could and are likely to occur in light of the plan or zoning regulations.
*634 "(2) If an agency prepares an EIS along these lines, the need to prepare subsequent, individual EISs on actual, specific projects that are developed in conformity with the plan or zoning regulations will be limited to those cases when the particular impacts associated with given projects warrant treatment in a more narrowly focused supplement to the original, broad EIS. In such cases, the programmatic EIS can be a useful tool for scoping the supplementary EIS.”
In accordance with all of the foregoing, the determination of a negative declaration is reversed and the matter is remanded to the Bureau of Planning and Zoning for appropriate environmental review which complies with the State Environmental Quality Review Act and the City of Rochester Environmental Review Ordinance.

. It should be noted that counsel goes on to state that "submission of this assessment does not reflect a conclusion on our part that environmental considerations are either necessary or appropriate at this stage of the process.”

. The court is constrained to find that the Prince Street Association presently has failed to make sufficient allegations or a showing that it or its members would be affected or aggrieved by the negative declaration. The association may, if it deems it appropriate, seek to intervene upon a proper showing.

. The respondents’ definition of historic facility and site in this case so as to exclude the H-4 historic district as a Type I action (see 6 NYCRR 617.12 [b] [9]) is narrow-sighted and really serves to ignore the purpose of the law.

. It should be pointed out that while agencies may develop criteria in addition to those listed in 6 NYCRR 617.11, individual procedures to implement SEQRA can be no less protective of environmental values than the procedures contained in 6 NYCRR Part 617 (See 6 NYCRR 617.4 [b], [e]).

. Contrary to the assertion by respondents Plenge and Sullivan the record indicates that respondent Spoelhof requested them to submit an environmental assessment form and in any event this regulation makes clear that the determination of significance must be made whether or not an environmental assessment form has been prepared.

. While respondent Spoelhofs letter of negative declaration states that his negative- declaration is based upon an environmental impact assessment, his answer places reliance upon an environmental assessment form. It appears that respondents Plenge and Sullivan submitted both forms to respondent Spoelhof. The court has carefully reviewed and considered both forms.

. Other areas checked were aesthetic considerations, transportation and employment.