■ In the Matter of ORCHARDS ASSOCIATES et al., Respondents, v PLANNING BOARD OF THE TOWN OF NORTH SALEM et

al., Appellants.—In a proceeding pursuant to CPLR article 78, *inter alia,* to review a determination of the Planning Board of the Town of North Salem (planning board), the planning board and the intervenor Concerned Residents of North Salem, Inc., appeal from a judgment of the Supreme Court, Westchester County (Marbach, J.), dated February 29, 1984, which, among other things, granted the petition to the extent of annulling the planning board's findings and resolution.

Judgment reversed, on the law, without costs or disbursements, determination confirmed and proceeding dismissed on the merits.

Petitioners became the owners of certain real property within the Town of North Salem in 1982. They wished to commence a large-scale, multistage commercial development of a portion of this property and sought approval from the Planning Board of the Town of North Salem for a conceptual site plan. Although the North Salem Zoning Ordinance did not provide a procedure for approval of such a conceptual plan, the planning board agreed to review a generic environmental impact statement (GEIS) for the proposed development pursuant to the provisions of the State Environmental Quality Review Act (SEQRA, ECL art 8).

After retaining the services of various engineers and consultants, petitioners submitted a draft GEIS (DGEIS) and then a final GEIS (FGEIS) to the planning board. On June 22, 1983, the planning board's own consultant submitted a report of his findings and conclusions concerning the project which favored its conditional approval. The intervenor Concerned Residents of North Salem, Inc. (hereinafter the Concerned Residents) then submitted its own summary of findings and conclusions which urged rejection of the project on environmental grounds. On July 26, 1983, the planning board issued its findings and adopted a resolution denying approval to the "Master Site Development Plan" upon the same grounds that were set forth in the report submitted by the Concerned Residents. The main reasons for the planning board's rejection of the plan were that it would have a severely adverse and potentially dangerous impact upon local traffic, that its underground sewage disposal system would adversely affect the quality and quantity of the area's ground water, and that it would not provide adequate drainage of storm water runoff. The planning board also found the proposed mitigation procedures insufficient to minimize these impacts.

Petitioners thereafter commenced the instant CPLR article 78 proceeding to vacate the planning board's determination.

Special Term granted the petition, concluding that the planning board's findings were not supported by substantial evidence. We now reverse.

The scope of review for substantive environmental determinations made pursuant to SEQRA is very limited. A determination as to the environmental consequences of a proposed project may be annulled only if it is irrational, arbitrary and capricious, or unsupported by substantial evidence *(see, Horn v International Business Machs. Corp.,* 110 AD2d 87; *Aldrich v Pattison,* 107 AD2d 258; *Town of Hempstead v Flacke,* 82 AD2d 183). Consequently, "the courts have allowed State or local 'lead agencies' considerable latitude in the exercise of discretion on substantive environmental matters" *(Horn v International Business Machs. Corp., supra,* p 92). Applying the aforementioned standard of review to the instant determination, we find that the planning board's conclusions concerning traffic, sewage and drainage impacts are supported by substantial evidence in the record. For example, while the traffic study prepared on behalf of petitioners states that no road improvements would be required to accommodate the first 300,000 square feet of commercial development, an array of other expert opinions on this topic was submitted to the planning board, including the report of a consultant retained by the Concerned Residents which criticized petitioners' traffic study and came to a contrary conclusion on the issues of traffic capacity and safety. Likewise, the findings of one consulting firm that the project's proposed septic tank wastedisposal system would deposit dangerous levels of nitrates in the area's ground water, although inconsistent with two other professional opinions on the matter, provided a sufficient basis for the planning board's determination that the proposed system would create severe health risks. Moreover, the record adequately supports the board's conclusion that the FGEIS did not contain satisfactory procedures to minimize these adverse impacts or the harmful effects of excessive storm water runoff.

We recognize that generic environmental impact statements are held to a lesser degree of specificity than statements prepared for specific site plans *(see,* 6 NYCRR 617.15; *Matter of Kravetz v Plenge,* 102 Misc 2d 622, 633-634) and that they need not address every conceivable alternative to the proposed development *(Webster Assoc. v Town of Webster,* 59 NY2d 220; *Horn v International Business Machs. Corp., supra; Coalition Against Lincoln W. v City of New York,* 94 AD2d 483, *affd* 60 NY2d 805). Nevertheless, the planning board did not act irrationally in requiring that petitioners obtain commitments

for the improvement of the local infrastructure before approval of the plan would be granted, as this would insure that the adverse impacts of the development are minimized.

Finally, we note that while the planning board's findings with respect to traffic, sewage and storm water impacts are supported by substantial evidence, other findings are without record support. The provisions of SEQRA are not to be used as a subterfuge through which commercial development may be totally prohibited. Mangano, J. P., Gibbons, Thompson and Kunzeman, JJ., concur.