OPINION OF THE COURT
Albert M. Rosenblatt, J.
This is a CPLR article 78 proceeding brought on by petition seeking to invalidate approvals of the Planning Board of the City of Poughkeepsie (Planning Board) authorizing the development of the proposed Wyndham Hotel and an adjacent parking garage.
Petitioners challenge the approval, asserting that respondent Planning Board acted without sufficient regard to traffic considerations in the vicinity involved. Petitioners claim that respondent’s actions violate the City Zoning Ordinance and Subdivision Ordinance, the General City Law and the New York State Environmental Quality Review Act (SEQRA; ECL 8-0101 et seq.), as well as the open meetings provisions of the Public Officers Law.
Respondents meet the petition on the merits and raise procedural issues as well, including a challenge to petitioners’ standing to bring this proceeding. Respondents aver that *382 petitioners are merely competitors who reside in and who own two motels in a neighboring municipality (this is undisputed), and that their interests in this action are solely economic, born out of fear of competition. Petitioners assert environmental interest.
The portions of General City Law §§ 32 and 33 relied upon by petitioners compel the Planning Board to "require that the streets” involved in the subject project "be suitably located to accommodate the prospective traffic” (General City Law § 33).
Petitioners also attempt to rely upon a number of Zoning Ordinances provisions, General City Law § 30-a (2), Subdivision Ordinance § 16-7 (e), Planning Board’s Subdivision Regulations § 8.3, and Public Officers Law § 104.
The court concludes that respondents were circumspect in their decisions and that they had an ample record upon which to base their determinations. The Board carefully examined and reviewed an abundant amount of technical and pertinent evidence, and there is no basis in law or in fact for the court to judicially override the reasoned conclusion of the respondents. They were not arbitrary or capricious, nor did they abuse their discretion under the appropriate standard for judicial review (Matter of Cowan v Kern, 41 NY2d 591; Matter of Juniper Homes v Nolte, 104 AD2d 942).
The second major prong of petitioners’ attack upon the Planning Board approvals is based on the pertinent provisions of SEQRA.
The test to be applied by a court in evaluating the propriety of a determination of significance or nonsignificance can be succinctly stated as follows: does the record demonstrate that the agency " 'identified the relevant areas of environmental concern, took a "hard look” at them * * * and made a "reasoned elaboration” of the basis for its determination’ ”. (Southampton Assn. v Planning Bd., 109 AD2d 204, 206; Matter of Jackson v New York State Urban Dev. Corp., 110 AD2d 304.)
The city, which does not have a hotel anywhere within its borders, has reached the entirely plausible conclusion that it could use one, and that, after a reasoned study of the traffic, has found that one hotel will not a traffic jam make. Perhaps the most poignant and revealing remark was made by the Planning Board Chairman who stated that the Board authorized a facility which might help revitalize an area which, as he wistfully points out, can use a small bit of traffic. That is a *383 far cry from the type of traffic concerns which pose even the smallest environmental or vehicular problems. The Planning Board, which has as its mandate the best interests of its city, should not be thwarted in this, particularly by an adversary who, from another municipality, would enjoin the project for transparently competitive purposes.
In any case, we find no arbitrariness, capriciousness, or irrationality in the Planning Board’s actions (Matter of Orchard Assoc. v Planning Bd., 114 AD2d 850).
The Poughkeepsie Urban Renewal Agency (PURA) submitted an EAF and supplement on October 22, 1984 concerning the proposed parking garage. The parking garage itself was found to have "no inherent trip generation,” as distinguished from the proposed hotel. No "Potential Large Impacts” are indicated in this EAF, so that "the lead Agency in the SEQR process may properly make and prepare a negative declaration with respect to SEQR regulations.” However, in an effort to more closely examine the "Small to Moderate Impacts” identified, as well as the "no impact” responses given, an expanded format part II to this EAF is included. The "Impact on Transportation” is studied in greater depth at paragraph 13, pages 6-8 of this supplement. Mention is made of the fact that "traffic volume and patterns were studied” and one-way flow was implemented on Market Street in connection with the opening, a short time earlier, of the Civic Center office building. With Market Street’s right lane serving as the ingress/ egress into the existing parking garage, there remain "an adequate number of lanes for through traffic.” This supplement states that "a similar arrangement could be made having the far left lane serve as” the ingress/egress to the proposed parking garage, thereby minimizing "potential traffic conflicts.” No significant resultant traffic delays are projected and no new signals or control equipment would be required.
The firm of Blasland & Bouck, independent consulting engineers and scientists, prepared a second EAF for the hotel and parking garage totaling 61 pages. Their EAF indicates a maximum of 150-200 total vehicular trips per hour for the hotel and parking garage, a projection consistent with the Goldome’s EAF.
STANDING
Petitioners do not live in the City of Poughkeepsie, nor do they own property or pay taxes in the city. They are not *384 employed in the city nor do they own a city business. They do not specifically allege, as is typical, if not required in article 78 actions (Matter of Terrell v Moses, 4 AD2d 171, 173) that they are citizens, residents, or taxpayers of the entity whose actions they assail and whose urban improvement efforts they seek to defeat. The respondents characterize petitioners’ interest as disingenuous, born solely of an economic interest in seeking to halt the most modest progress of the neighboring municipality, in order to further their own financial condition by attempting to stifle competition.
Respondents have even challenged the ownership of the two motels claiming that petitioners are not owners of record. Petitioners contend that they are "contract vendees in possession and own an interest in the Red Bull Motor Inn, located in the Town of Poughkeepsie,” and "are partners in Hudson Valley Associates, a New York partnership which owns the Ramada Inn in the Town of Poughkeepsie.”
Assuming this to be so (cf. Meade v North Country Co-op. Ins. Co., 128 Misc 2d 274, 276-277), petitioners are obviously competitors in a neighboring town, and it would be naivé to believe, notwithstanding feckless pleadings of environmental lip service, that their major concern derives from much else.
It is well established that mere competitive injury, of itself, will not confer standing (Matter of Dairylea Coop. v Walkley, 38 NY2d 6).
The same rationale has been applied in rezoning matters (Westborough Mall v City of Cape Giradeau, 693 F2d 733, 747, cert denied sub nom. Drury v Westborough Mall, 461 US 945; 8A McQuillin, Municipal Corporations § 25.318, nn 26-28 [3d ed]).
Petitioners have couched their strained allegations of standing by alleging visits to and use of city streets and facilities such as would given them an "interest” in the traffic and related considerations involved in the construction of a hotel and parking garage.
Later, in the same paragraph, petitioners allow that their competitive interests would indeed be "threatened” by the proposed project interests which, respondents claim, underlie this action, and render "sham” petitioners’ protestations as to traffic considerations which exist several miles from petitioners’ motels.
There is no similarity between the bona fide status of a taxpayer resident, or neighborhood association, which may *385 claim to be adversely affected by traffic (e.g., Matter of Reeder v Szmigel, 109 AD2d 1078; Matter of Gaona v Town of Huntington Zoning Bd. of Appeals, 106 AD2d 638) and a nontaxpayer, nonresident, whose entrepreneurial interests are presented under the guise of traffic considerations which are, in reality, at best de minimis. Of course, petitioners have a commercial competitive interest which they do not (and cannot) deny. But that is not an interest which confers standing (Matter of Dairylea Coop. v Walkley, supra).
Despite the hollow nature of petitioners’ standing, the court has taken to the merits because of the judicial preference toward settling disputes of public concern, rather than deciding cases by procedural door closing (Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 6; Venditti v Incorporated Vil. of Brookville, 96 AD2d 887).
The record before us plainly demonstrates that the City of Poughkeepsie Planning Board acted responsibly and painstakingly in making determinations dealing with the orderly development of their city. As local officials they are vested with the duty to make sensitive planning decisions, with the best interests of their own residents and taxpayers in mind. There is nothing here to suggest that they have done anything but that. As such, the city’s own choices, as to its own zoning and environment, should be respected (Matter of Cowan v Kern, 41 NY2d 591, supra; Matter of Horn v International Business Machs. Corp., 110 AD2d 87, 100), particularly where the record reflects nothing but civic-minded actions readily justifiable for the common good.
The courts are not forums for the exploitation or subversion of environmental enactments. SEQRA was promulgated with lofty objectives as a shield to insure the preservation and enhancement of resources which are aesthetically, culturally and environmentally valued. It is not there to be rattled as a sword which threatens to bleed the opposition to death by interminable litigation.
If those laws are to be perverted into engines of procedural obstructionism, or handy, manipulative devices for advancing commercial self-interest in the name of the environment, the judicial branch should lend no help.
It is ironic enough that the petitioners here, for the most transparent purposes, would thwart a neighboring city from achieving what that municipality regards as desirable and benign civic enhancement. That the petitioners invoke the *386 environmental laws to do so is a greater irony yet. That they should speciously cloak themselves in someone else’s municipal attire and thereby attempt to deploy the environmental laws as offensive weapons is an irony of unendurable dimensions, which further discolors an otherwise frivolous suit.
The court finds the petition to be entirely devoid of merit, and respondents’ motion to dismiss is therefore granted. That being so, it is unnecessary for the court to deal with the other procedural challenges raised by respondents.
The petition is dismissed, with costs.