■ In the Matter of ROBERT HARE et al., Appellants, v LEE A. MOLYNEAUX et al., Constituting the Planning Board of the City of Kingston, et al., Respondents.—Crew III, J. Appeal from a judgment of the Supreme Court (Torraca, J.), entered April 10, 1991 in Ulster County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of the Planning Board of the City of Kingston granting a special permit to respondent Rural Ulster Preservation Company.

Respondent Rural Ulster Preservation Company (hereinafter RUPCO) is the owner of a multiunit apartment building in the City of Kingston, Ulster County, which is located within the Rondout Historic District. RUPCO sought the necessary approvals to rehabilitate the property with a view toward renting the apartment units to low-income tenants. On October 11, 1990, the Planning Board of the City of Kingston (hereinafter Board) determined that RUPCO's special permit application would have no significant impact on the environment and would not require the preparation of a draft environmental impact statement. The Board issued a negative declaration and approved the renovation as proposed. Petitioners, real property owners contiguous to and near the proposed project, commenced this CPLR article 78 proceeding against the members of the Board and RUPCO, asserting, *inter alia,* violations of the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA). Supreme Court dismissed the petition and this appeal by petitioners ensued.

On April 7, 1990, the City of Kingston Historic Landmarks Commission approved RUPCO's application for total reconstruction of the interior of the proposed housing site. In May 1990, the State Office of Parks, Recreation and Historic Preservation determined, subject to certain conditions, that RUPCO's renovation project would have no adverse impact on the proposed housing site or Rondout Historic District. On May 8, 1990, RUPCO submitted a special permit application and short environmental assessment form (hereinafter EAF) to the Board for approval of its renovation project of the proposed housing site. Initially, RUPCO planned to renovate the site, rent the apartment units to low-income tenants, use a portion of the site as a counseling center and hire a local agency to

manage the site. On June 7, 1990, the Board published a public hearing notice in the local newspaper concerning RUPCO's application. One week later at a public hearing, the Board accepted oral and written comments from the public on the application. Thereafter, RUPCO was directed to and did submit a long EAF. On June 26, 1990, the Board declared itself the lead agency, classified RUPCO's application as a type I action and put other agencies on notice of its lead agency status. In August 1990, the Board, acting as lead agency, raised concerns relating to the impact of RUPCO's renovation project on the Rondout Historic District and the growth and character of the community. Additionally, it acknowledged concerns raised by the public, i.e., parking, drainage, play area and management of the site.

Petitioners contend that because the Board identified six areas of environmental concern, it was therefore prohibited from issuing a negative declaration without requiring preparation of an environmental impact statement (see, Matter of Shawangunk Mountain Envtl. Assn. v Planning Bd., 157 AD2d 273). We disagree. While we have observed that with a type I action it is more likely that an environmental impact statement will be required, we have made it clear that we do not mean to imply that in any type I action mitigating measures incorporated in the proposal would never justify a negative declaration (see, supra, at 277). This case appears to be the kind envisioned by the limitation of our holding in Matter of Shawangunk Mountain Envtl. Assn. v Planning Bd. (supra). Here, RUPCO revised its plans and modified its program to address those problems raised by the public and the Board. It decided to construct a paved parking area, install drywells in the parking area to reduce drainage problems, increase the play area, reduce the size of apartment units, add more working area space in its laundry facility and manage the site itself. Additionally, it decided to restrict its construction to seven apartment units, abandon its counseling center idea and target a tenant population that would be required to work by the local social services agency, but who would be eligible for rental and child assistance.

Additionally, petitioners seem to contend that the Board failed to properly perform its function when it refused to consider whether the introduction into the neighborhood of seven families receiving public assistance constituted negative "social" and "economic" factors as those terms are used in SEQRA (see, ECL 8-0109). We disagree. To the contrary, we would be compelled to annul, as irrational, a finding that

welfare recipients are inherently harmful to the environment (cf., *Matter of Weiss v Planning Bd.*, 130 Misc 2d 381, 384-386). The Board, quite properly, undertook the appropriate inquiry when it considered the effect that the addition of seven families would have on the environment in terms of parking, access, traffic, drainage and increased land use density without regard to the families' status as public assistance recipients.

As to petitioners' contention that the public hearing was premature and in violation of the City's ordinance, we also disagree. A public hearing must be held within 45 days of the submission of a special permit application and notice of the hearing must be published at least five days prior to the public hearing (General City Law § 30-a [2]; Local Laws, 1985, City of Kingston §§ 123-29, 123-30). The record clearly demonstrates that RUPCO submitted its special permit application to the Board on May 8, 1990 and a public hearing was scheduled for June 14, 1990. Additionally, the notice of the hearing was published on June 7, 1990, all of which was in accordance with the statutory requirements.

Finally, we observe that our review is limited to whether the Board identified relevant areas of environmental concern, took a "hard look" at them and made a reasoned elaboration of the basis of its determination (*see, Matter of West Branch Conservation Assn. v Planning Bd.*, 177 AD2d 917). A review of the minutes of the Board's several meetings, parts 2 and 3 of the EAF, the decision of October 11, 1990 and the negative declaration satisfy us that the Board fully complied with the duties imposed upon it by 6 NYCRR 617.6 (g) (2). Its determination should therefore be upheld.

We have examined and found without merit petitioners' remaining contentions.

Weiss, P. J., Mikoll, Mercure and Casey, JJ., concur. Ordered that the judgment is affirmed, without costs.