■ In the Matter of RICHARD E. MILLER, Appellant, v CITY OF LOCKPORT, Respondent, and MODERN RECYCLING, INC., Intervenor-Respondent. [620 NYS2d 680] —Judgment unanimously reversed on the law with costs, motion denied and petition granted. Memorandum: Supreme Court erred in dismissing the petition seeking to annul the negative declaration of environmental significance of the City of Lockport Common Council (Common Council) and its resolution granting intervenor-respondent Modern Recycling, Inc. (Modern) a special use

permit. Modern submitted an application to respondent City of Lockport (City) for a special use permit to construct a material recovery facility and solid waste transfer station. The City thereafter commenced a review of the application pursuant to the State Environmental Quality Review Act (SEQRA; ECL art 8). That review established that Modern's facility would sort and repackage recyclable materials and act as a transfer station for municipal solid waste, including construction and demolition materials. That facility was to be built on land to be acquired from the City and would process an estimated 1,000 tons of material per day. Approximately 1.2 acres of the land to be transferred from the City to Modern was dedicated park land. As part of the project, the City was to build a sewer line to service the facility and to reconstruct a nearby highway.

After receiving reports from the City Planning Board and Modern's consultants, the Common Council found in its Environmental Assessment Form (EAF) that the facility would have an adverse environmental impact on traffic. The Common Council also found that the facility would have an adverse environmental impact on open space and recreation arising from the sale of the park land and from public access to the remainder of the park being blocked for up to one hour a day because of the transportation of materials to and from the facility. Additionally, the facility would have an impact on energy usage and an adverse environmental impact on odor and noise. The Common Council found that odors from the facility would occur routinely, i.e., more than one hour per day, and that, during construction and operation of the facility, noise would exceed the local ambient noise levels for noise outside the structure. Moreover, the Common Council found that the proposed action would affect public health and safety because the construction was within 2,000 feet of a site used for disposal of hazardous wastes. Finally, the Common Council found that the facility would have an adverse impact on the growth and character of the community or neighborhood and that there was significant public controversy surrounding the environmental impacts of the project. The Common Council found that all those impacts would be slight to moderate and issued a negative declaration, i.e., that the project would not have a significant effect on the environment, and determined that a Draft Environmental Impact Statement (EIS) would not be prepared. In support of the negative declaration, the Common Council stated that, to better ensure reduced environ-

mental impacts, conditions were being imposed on the special use permit for the facility.

We conclude that the Common Council violated the procedural requirements of SEQRA in issuing its negative declaration. The EAF established that there were numerous negative impacts on the environment, but found that they had been mitigated or eliminated by imposing conditions on the applicant. Given those circumstances, the Common Council's negative declaration was equivalent to a conditional negative declaration, which is not permitted in this Type I action. Consequently, the negative declaration must be annulled *(see, Matter of Ferrari v Town of Penfield Planning Bd.,* 181 AD2d 149, 151; *Matter of Shawangunk Mtn. Envtl. Assn. v Planning Bd.,* 157 AD2d 273). The City's reliance on *Matter of Hare v Molyneaux* (182 AD2d 908) to support the contention that the negative declaration was not conditional is misplaced. In this case, unlike *Hare,* the conditions on the project were imposed upon the application by the lead agency.

Moreover, given the scope and magnitude of this project, we conclude that the City violated SEQRA when it issued a negative declaration rather than proceeding with the drafting of an EIS. In Type I actions there is a relatively low threshold for requiring an EIS and one should be prepared when there is a potentially significant adverse effect on the environment *(see, Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 364-365; *H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232). Indeed, 6 NYCRR 617.12 (a) (1) states that a Type I action carries with it the presumption that it is likely to have a significant effect on the environment and will require an EIS. More importantly, an EIS is at the heart of SEQRA and is specifically designed to ensure that environmental issues are injected directly and openly into government decision making *(see, Akpan v Koch,* 75 NY2d 561, 570; *Matter of Coca-Cola Bottling Co. v Board of Estimate,* 72 NY2d 674, 679). The preparation of an EIS guarantees compliance with the requirements that a lead agency undertake a full review of the adverse environmental effects of a project, consider alternatives to the project, including "no action", and consider mitigation measures (ECL 8-0109 [2]; 6 NYCRR 617.14 [f]; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 416; *Matter of Shawangunk Mtn. Envtl. Assn. v Planning Bd., supra).*

Here, the project is massive in scope and involves the disposal of 1,000 tons of solid waste and recyclables per day, the reconstruction of highways, the building of a new sewer

line, and the sale of dedicated park land. It admittedly has adverse environmental impacts with regard to odor, noise, traffic, open space and recreation and growth and character of the community or neighborhood. Given those circumstances, the relatively low threshold for preparing an EIS on a Type I project is met (see, *H.O.M.E.S. v New York State Urban Dev. Corp., supra,* at 232). SEQRA requirements in the instant case cannot be met by the lead agency's imposition and the applicant's acceptance of mitigation measures to lessen the environmental impacts. To hold otherwise would, in contravention of the intent of SEQRA, reduce the accountability of the lead agency, lessen the public access to the process and permit governmental approval of this massive project without consideration of less intrusive alternatives, including no action (see generally, ECL 8-0109 [2]; *Matter of Jackson v New York State Urban Dev. Corp., supra; Matter of Shawangunk Mtn. Envtl. Assn. v Planning Bd., supra).* Consequently, the petition must be granted and the City's negative declaration and the special use permit annulled.

We have reviewed petitioner's remaining contentions and conclude that they are lacking in merit. (Appeal from Judgment of Supreme Court, Niagara County, Rath, Jr., J.—Article 78.) Present—Balio, J. P., Lawton, Fallon, Wesley and Doerr, JJ.