■ In the Matter of LAWRENCE MERSON et al., Appellants, v DONALD F. McNALLY et al., Respondents, and PHILIPSTOWN

INDUSTRIAL PARK, INC., Intervenor-Respondent. [643 NYS2d 129] —In a proceeding pursuant to CPLR article 78 to review a determination of the Planning Board of the Town of Philipstown, dated May 20, 1993, the petitioners appeal from a judgment of the Supreme Court, Putnam County (Hillery, J.), dated September 22, 1994, which dismissed the proceeding.

Ordered that the judgment is reversed, on the law, with one bill of costs payable by the respondents and intervenor-respondent, the petition is granted, and the determination of the Planning Board of the Town of Philipstown, dated May 20, 1993, is annulled.

In 1987, the intervenor, Philipstown Industrial Park, Inc., acquired an 80-acre tract of land in the Town of Philipstown. Prior to that, surface mining activity had been conducted on the site. This mining activity had commenced in 1955 and continued up until the early 1970's. After that, mining occurred sporadically until the site was abandoned in the mid-1980's. The site remains in an unrestored, unlandscaped, and abandoned state.

On November 29, 1990, the Planning Board of the Town of Philipstown (hereinafter the Planning Board) granted preliminary subdivision approval for a 37-lot single family residential subdivision encompassing virtually the entire site.

Thereafter, the intervenor applied for a temporary special use permit for soil mining and reclamation on the parcel (see, Town of Philipstown Code art X). The application for the special use permit, dated April 24, 1991, as corrected September 26, 1991, specified that 9.8 acres would be subject to surface mining and excavation activities for a period of five to seven years, during which time approximately 325,000 cubic yards of unconsolidated surface material would be removed. A second area of about 7.5 acres would not be mined but would be regraded and reclaimed. A third area would be subject to various activities necessary to the operation of the mine, including the construction of a berm. The plan necessarily resulted in the abandonment of eight of the single-family home lots which had previously been given preliminary subdivision approval.

Upon its review of the application for the temporary special use permit as lead agency under the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA), the Planning Board issued a negative declaration, concluding that the project would not have a significant environmental impact and thus an environmental impact statement (hereinafter EIS) was not required. The instant proceeding was commenced by the petitioners, landowners adjoining the intervenor's parcel, chal-

lenging that determination. The Supreme Court dismissed the proceeding. We reverse.

As the parties concede, the intervenor's project constituted a Type I action under the SEQRA regulations because it "involves the physical alteration of 10 acres" (6 NYCRR 617.12 [b] [6] [i]).

It is well settled that there is a relatively low threshold for the preparation of an EIS; i.e., "if the action may have a significant effect on the environment" (*Matter of Chemical Specialities Mfrs. Assn. v Jorling,* 85 NY2d 382, 397; *Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 364-365). Moreover, the SEQRA regulations provide that a Type I action, such as the one proposed herein, "carries with it the *presumption* that it is likely [to] have a significant effect on the environment and may require an EIS" (6 NYCRR 617.12 [a] [1] [emphasis supplied]; *see also, Matter of Teich v Buchheit,* 221 AD2d 452; *Eggert v Town Bd.,* 217 AD2d 975; *Matter of Miller v City of Lockport,* 210 AD2d 955, 957; *H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232).

In the instant case, the Planning Board identified numerous areas of significant environmental impact in connection with the proposed action. These included potential air pollution and noise, adverse impact on water resources (including the possibility of groundwater contamination), potential adverse impact on visual conditions and vehicular traffic in the vicinity of the site, and incompatibility of the use of the property for mining purposes with the residential use of the surrounding parcels. Nevertheless, the Planning Board concluded that *all* of the significant impacts had been mitigated by various conditions that had been imposed on the project. These included the watering of roads and haulageways to limit dust, and the erection of a six foot high sound barrier and the limitation of the hours of mining operation to limit noise. Other conditions that were imposed on the project were a limitation of the area where the intervenor's vehicles would be serviced (to trap any oil spills that might result from such servicing), the construction of a berm and silt fence to conserve water resources, the placement of a nine-foot "overburden" in an area adjacent to a pond on the site to protect the underlying aquifers, coniferous plantings and the construction of a fence to preserve the visual conditions of the site, the placement of fencing between the mined area and the adjacent residential areas, and the possible modification of the previously approved subdivision plan.

The petitioners contend that the Planning Board improperly issued a conditioned negative declaration (hereinafter CND)

for the Type I action at issue herein. The SEQRA regulations define a CND as a "negative declaration issued by a lead agency for an *unlisted action,* involving an applicant, in which the action as initially proposed may result in one or more significant adverse environmental effects; however, mitigation measures identified and required by the lead agency * * * will modify the proposed action so that no significant adverse environmental impacts will result" (6 NYCRR 617.2 [h] [emphasis supplied]). The SEQRA rules further provide that, where certain conditions have been met, a lead agency "at its option" may prepare a CND "[f]or [an] unlisted action" (6 NYCRR 617.6 [h]; *see also,* The SEQR Handbook, at 49 [1992]).

Inherent in the Planning Board's determination was a recognition of significant environmental impacts posed by the intervenor's project (*Matter of West Branch Conservation Assn. v Planning Bd.,* 207 AD2d 837, 841). It is evident that the numerous measures proposed by the intervenor in mitigation of these impacts were conditional prerequisites for the issuance of the negative declaration (*see, Matter of Shawangunk Mtn. Envtl. Assn. v Planning Bd.,* 157 AD2d 273, 277). Under these circumstances, we conclude that the Planning Board's negative declaration was the functional equivalent of a conditioned negative declaration (*see, Matter of Teich v Buchheit,* 221 AD2d 452, *supra; Matter of Miller v City of Lockport,* 210 AD2d 955, 957, *supra; Matter of Ferrari v Town of Penfield Planning Bd.,* 181 AD2d 149; *Matter of Shawangunk Mtn. Envtl. Assn. v Planning Bd., supra*).

The issuance of a conditioned negative declaration for the Type I action at issue herein was an unauthorized departure from the strictures of SEQRA, whose letter and spirit, we have repeatedly noted, require literal compliance (*see, Matter of Group For S. Fork v Wines,* 190 AD2d 794, 795). In so holding, we stress the fact that significant environmental impacts had initially been identified with respect to the action here at issue. To confirm the "negative declaration" in this case would permit the circumvention of SEQRA's comprehensive review process, which, among other things, is designed to ensure the injection of full, open and deliberative consideration of environmental issues into governmental decision-making (*see, Akpan v Koch,* 75 NY2d 561, 569).

Upon the foregoing, we conclude that the Planning Board's determination in this case was not made in accordance with lawful procedure and was arbitrary, capricious, and irrational (*Akpan v Koch, supra,* at 569; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 415-416; *Chinese Staff &*

*Workers Assn. v City of New York,* 68 NY2d 359, *supra).* It must therefore be annulled.

The appellants' reliance on *Matter of Hare v Molyneaux* (182 AD2d 908, 909) is misplaced. In that case, the overall scope of a project was reduced, apparently substantially, while SEQRA review was pending, a situation that is factually distinguishable from the instant case.

In view of the foregoing, we do not reach any of the other issues raised by the parties. Thompson, J. P., Joy, Krausman and Florio, JJ., concur.