[645 NYS2d 637]

In the Matter of CATHEDRAL CHURCH OF SAINT JOHN THE DIVINE et al., Appellants, v DORMITORY AUTHORITY OF THE STATE OF NEW YORK et al., Respondents.

Third Department, July 25, 1996

## APPEARANCES OF COUNSEL

*Arnold & Porter,* New York City *(Kent A. Yalowitz* of counsel), for appellants.

*Cadwalader, Wickersham & Taft,* New York City *(Michael M. Gordon* of counsel), for Amsterdam Nursing Home Corporation, respondent.

*Brown & Wood,* New York City *(Maria D. Melendez* of counsel), for Dormitory Authority of the State of New York, respondent.

*David Nissenbaum,* New York City, for Municipal Art Society of New York, *amicus curiae.*

## OPINION OF THE COURT

Spain, J.

Respondent Amsterdam Nursing Home Corporation (hereinafter Amsterdam) operates a 303-bed, not-for-profit nursing home located on Amsterdam Avenue in New York City. Amsterdam seeks to renovate its existing 13-story nursing home structure and construct a 13-story addition on contiguous property to accommodate an additional 106 beds and additional necessary space. In conjunction with renovating and expanding the nursing home, Amsterdam proposes to add an adult day health care program to its services. This program would occupy space in the currently unused and deteriorated Croton Aqueduct Gatehouse, which is located on property adjacent to the nursing home.

In March 1994 Amsterdam requested State funding in the amount of $45,000,000 from respondent Dormitory Authority of the State of New York (hereinafter respondent) in order to finance the project. Prior to seeking funding from respondent, an environmental review of the project was undertaken in ac-

cordance with the City Environmental Quality Review (hereinafter CEQR) by the New York City Department of City Planning and the Department of Environmental Protection. These agencies, after reviewing concerns raised by numerous individuals and other interested parties and exploring alternatives to the project, issued a conditional negative declaration finding that the project would have no significant environmental impact provided certain conditions were met, including implementation of a plan to protect the Gatehouse during construction. In 1992, after Amsterdam agreed to the conditions, City approval for the project was granted.[1] Prior to seeking funding from respondent, Amsterdam purchased, at public auction, the property on which the Gatehouse is located. Notably, Amsterdam had been leasing this particular parcel of property from the City for nearly 60 years for use as an outdoor sitting area for its residents.

In light of Amsterdam's request for funding, respondent commenced an environmental review of the nursing home project in accordance with the mandates of the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]). In so doing, respondent declared itself the lead agency and classified the project as a type I action (see, 6 NYCRR 617.2 [ii]; 617.12). Following the preparation and submittal of an environmental assessment form (hereinafter EAF) and supporting documentation by Amsterdam, as well as respondent's solicitation and receipt of comments by various interested parties, respondent concluded that the project would not have a significant effect on the environment and issued a negative declaration. As a result of this determination, Amsterdam was not required to prepare an environmental impact statement (hereinafter EIS) for the project (see, ECL 8-0109 [2]). Thereafter, on March 29, 1995, respondent's Board of Directors adopted a resolution authorizing the issuance of $45,000,000 of respondent's obligations for the nursing home project.

Petitioners, the Cathedral Church of Saint John the Divine, which is located across the street from the nursing home, and individuals who reside near the nursing home, commenced this combined CPLR article 78 proceeding and action for declaratory judgment seeking to annul respondent's determination

---

1. A proceeding seeking to annul the conditional negative declaration and all resolutions concerning the project, including those approving the sale of the property and amending the Cathedral Parkway Urban Renewal Plan to permit the project to continue, was unsuccessful (see, Matter of Roistacher v Council of City of N. Y., 199 AD2d 68, lv denied 83 NY2d 754).

authorizing the funds for the proposed expansion of the nursing home. Supreme Court rejected petitioners' allegations and dismissed the petition. Petitioners appeal.

■ We affirm. Initially, however, we reject respondents' assertion that this proceeding is barred by the applicable Statute of Limitations and doctrine of laches because petitioners failed to commence a suit challenging the project subsequent to Amsterdam's final receipt of City approval in 1992. Regardless of whether petitioners challenged the final determination issued by the City concerning the project, they have an absolute right to challenge the separate and distinct determination rendered by respondent. Having commenced the proceeding well within four months of respondent's issuance of the negative declaration, the proceeding was timely commenced (*see*, *Chase v Board of Educ.*, 188 AD2d 192, 196; *Matter of Monteiro v Town of Colonie*, 158 AD2d 246, 249-250; *Matter of Wing v Coyne*, 129 AD2d 213, 216-218).

■ Moving now to petitioners' contentions, we reject their primary assertion that respondent erred both in determining that no EIS was required for the project and in failing to take into account the environmental impact the project will have on aesthetic, architectural and historical resources. Specifically, petitioners claim that the negative declaration fails to acknowledge the adverse impact the 13-story nursing home addition will have on the character and quality of the Cathedral; namely, that the structure will obscure the sky and close in the horizon to the detriment of those who leave the Cathedral, reduce the brilliance of its stained glass windows and destroy its view-shed. Moreover, petitioners assert that respondent ignored concerns that the project will destroy the underground engineering installations attached to the Gatehouse and will be in "disharmony" with the scale of surrounding buildings, including the Gatehouse and the contiguous Fire Engine Company building.

SEQRA requires an agency to review proposed actions "that may affect the environment" (6 NYCRR 617.2 [b] [1]). For a type I action such as the instant project (*see*, 6 NYCRR 617.2 [ii]; 617.12), the lead agency must conduct an evaluation, usually based on an EAF, and make a positive or negative declaration as to whether the proposed action will have a significant effect on the environment (*see*, 6 NYCRR 617.2 [m], [y], [cc]; 617.10 [a]). The issuance of a negative declaration ends the review procedure (*see*, Weinberg, Practice Commentary, McKinney's Cons Laws of NY, Book 17¹/₂, ECL C8-0109:4, at 78).

Prior to issuing a negative declaration, an agency must evaluate numerous criteria (*see,* 6 NYCRR 617.6 [g] [2]; 617.11), take a " 'hard look' " at relevant areas of environmental concern and make a written "reasoned elaboration" of its basis for the determination (*Matter of Holmes v Brookhaven Town Planning Bd.,* 137 AD2d 601, 604, *lv denied* 72 NY2d 807; *see, Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417). And, although an EIS is presumptively required for type I actions (*see, Matter of Town of Dickinson v County of Broome,* 183 AD2d 1013, 1014), it is not a per se requirement (*see, Matter of Save the Pine Bush v Planning Bd.,* 217 AD2d 767, *lv denied* 87 NY2d 803). In reviewing an agency's SEQRA determination, the standard of review is whether the determination was arbitrary and capricious or an abuse of discretion (*see, Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 363; *Matter of Jackson v New York State Urban Dev. Corp., supra*).

The record reveals that respondent's determination to issue a negative declaration and forego the need for an EIS was neither arbitrary and capricious nor irrational. First, the record amply demonstrates that respondent identified the relevant areas of environmental concern as raised by petitioners, including the impact the project would have on, *inter alia,* the Cathedral, the Gatehouse and the Fire Engine Company building, and took the requisite "hard look" at same prior to issuing the negative declaration (*see, Matter of Manes v Simpson,* 108 AD2d 914, *lv denied* 65 NY2d 603; *cf., Matter of New York Archaeological Council v Town Bd.,* 177 AD2d 923). Indeed, respondent received numerous reports, comments and documentation regarding the project's potential impact upon archaeological, historical and aesthetic resources, especially pertaining to its proximity to the Cathedral and the Gatehouse.

Moreover, upon careful review of these documents and the negative declaration, we conclude that they support respondent's determination that the project will not have a significant impact on the environment as suggested by petitioners. These documents demonstrate that each of the issues/ complaints raised by petitioners regarding the proposed action was addressed by respondent and, contrary to petitioners' suggestions to the contrary, the record further reveals that respondent indeed gave the SEQRA requirements more than mere superficial treatment prior to issuing the negative declaration (*see, e.g., Matter of Citizens Accord v Town Bd.,* 192 AD2d 985, *lv denied* 82 NY2d 656). Finally, the statements in

the negative declaration concerning the project and the fact that it will not have a significant impact on the environment plainly constitute a "reasoned elaboration" on the part of respondent.

■ Petitioners' contention that respondent violated the Parks, Recreation and Historic Preservation Law is without merit. Pursuant to PRHPL 14.09 (1), prior to State funding of any project: "the agency's preservation officer shall give notice, with sufficient documentation, to and consult with the [C]ommissioner [of Parks, Recreation and Historic Preservation] concerning the impact of the project if it appears that any aspect of the project may or will cause any change, beneficial or adverse, in the quality of any historic, architectural, archeological, or cultural property that is listed on the national register of historic places or property listed on the state register or is determined to be eligible for listing on the state register by the commissioner." PRHPL 14.09 (1) further details that "[e]very agency shall fully explore all feasible and prudent alternatives and give due consideration to feasible and prudent plans which avoid or mitigate adverse impacts on such property". The record reveals that consultations did in fact take place with the Commissioner of Parks, Recreation and Historic Preservation concerning the impact of the project on the Cathedral, the Gatehouse and the Fire Engine Company building as required under the statute. Notably, in a letter dated March 3, 1995 to Amsterdam, the Commissioner made clear that "the impact of the nursing home addition to all eligible or listed buildings within the area of effect, including the Cathedral and the Fire Engine Company", had been taken into account and that, of the structures at issue, "*only* the Gatehouse and its associated open space park area are being directly impacted by the new construction" (emphasis supplied).

Inasmuch as the Commissioner, among others, determined that the project would have no direct impact on either the Cathedral or the Fire Engine Company building, under the express language of the statute, there was no need to explore reasonable and prudent alternatives to it insofar as these structures are concerned. To the extent that the project was found to have adverse impacts on the Gatehouse, the record reveals that prudent and reasonable alternative plans were considered and implemented, to the satisfaction of the Commissioner, to alleviate those adverse impacts (*see, Sierra Club v Board of Educ.*, 127 AD2d 1007, 1008-1009, *lv denied* 70 NY2d 612). In our view, under these circumstances respondent

fulfilled the obligations imposed under PRHPL 14.09 (1) (*see generally, Matter of Citizens for Clean Air v New York State Dept. of Envtl. Conservation*, 135 AD2d 256, *lv dismissed* 72 NY2d 853; *Matter of Ebert v New York State Off. of Parks, Recreation & Historic Preservation*, 119 AD2d 62, *lv denied* 68 NY2d 612).

Petitioners next contend that respondent impermissibly issued a conditioned negative declaration. Their argument is premised on respondent's concurrence with a memorandum of agreement entered into between the State Advisory Council on Historic Preservation, the Department of Housing and Urban Development and the State Historic Preservation Officer concerning the project. We reject petitioners' argument as the record does not support their assertion that respondent, in effect, issued a conditioned negative declaration.

A conditioned negative declaration is defined, in pertinent part, as: "[A] negative declaration issued by a lead agency for an unlisted action * * * in which the action as initially proposed may result in one or more significant adverse environmental effects; however, mitigation measures identified and required by the lead agency * * * will modify the proposed action so that no significant adverse environmental impacts will result" (6 NYCRR 617.2 [h]). Where, as here, a type I action is involved, a conditioned negative declaration may not be issued (*see, Matter of Teich v Buchheit*, 221 AD2d 452, 454; *Matter of Miller v City of Lockport*, 210 AD2d 955, 957, *lv denied* 85 NY2d 807; *Matter of Shawangunk Mtn. Envtl. Assn. v Planning Bd.*, 157 AD2d 273; *see also*, 6 NYCRR 617.2 [h]; 617.6 [h] [1]). While there can be little doubt that the proposed project, as reviewed by respondent, included various measures to utilize and preserve the Gatehouse, as outlined in the memorandum of agreement, this is not tantamount to respondent imposing such mitigation measures and conditions on Amsterdam before it would issue the negative declaration (*cf., Matter of Ferrari v Town of Penfield Planning Bd.*, 181 AD2d 149, 151).

Significantly, the conditions which petitioners allege were imposed on Amsterdam, thereby allegedly rendering the negative declaration conditioned, were not conditions or mitigation measures identified and required by respondent so that no significant adverse environmental conditions would result (*cf., Matter of Shawangunk Mtn. Envtl. Assn. v Planning Bd., supra*). Rather, they were part and parcel of the project plans

being reviewed by respondent[2] —plans which had been revised and modified to address problems raised throughout the City's CEQR review (*see generally, Matter of Hare v Molyneaux,* 182 AD2d 908, 909).

■ Finally, we reject petitioners' argument that the property on which Amsterdam seeks to expand the nursing home constitutes a "parkland" which cannot be alienated without the express approval of the State Legislature pursuant to Public Housing Law § 124. Equally unavailing is petitioners' assertion that, because no discovery took place to explore the possibility that the site "might" constitute a parkland, Supreme Court improperly determined that the property is not a parkland and improperly dismissed this cause of action. While "[d]edicated park areas in New York State are impressed with a public trust, and their use for other than park purposes * * * requires the direct and specific approval of the Legislature, plainly conferred" (*Grayson v Town of Huntington,* 160 AD2d 835, 837, *lv denied* 76 NY2d 714), the record plainly reveals that the property which petitioners baldly, and in conclusory fashion, classify as a "parkland" (they also characterize it as a "garden" and "forecourt" to the Cathedral) is simply not a dedicated park area. The uncontroverted proof reveals that the property in dispute had been leased to Amsterdam by the City for at least 60 years prior to ultimately being sold to Amsterdam and, during this time period, used as a private sitting area for nursing home residents and visitors.

Accordingly, Public Housing Law § 124 is inapplicable to this proceeding and petitioners' reliance on same is misplaced (*see, e.g., Grayson v Town of Huntington,* 208 AD2d 899, *lv denied* 85 NY2d 807; *Matter of Douglaston & Little Neck Coalition v Sexton,* 145 AD2d 480). In light of the foregoing, Supreme Court properly treated petitioners' over-all request for relief as a motion for summary judgment (*see, Matter of Bahar v Schwartzreich,* 204 AD2d 441, 443; *see also,* CPLR 409 [b]) and, even in the absence of a cross motion by respondent, properly dismissed the parkland claim (*see,* CPLR 3212 [b]).

CARDONA, P. J., MIKOLL, CREW III and YESAWICH JR., JJ., concur.

Ordered that the judgment is affirmed, without costs.